Owen Campbell (SBN 229976)
Owen.Campbell@wbd-us.com
Andrew Yu-Chih (SBN 326135)
Andrew.Yu-Chih@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
400 Spectrum Center Drive, Suite 1700
Irvine, California 92618
Telephone:   (714) 557-3800
Facsimile:   (714) 557-3347


Attorneys for Defendant
PHH Mortgage Corporation, now known as
Onity Mortgage Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUTHER K. EVANS, Successor in Interest to Floria Evans,<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORPORATION; MORTGAGE ASSET MANAGEMENT, LLC; and DOES 1-10 inclusive,<br><br>Defendants. | Case No.<br><br>(Removed from Contra Costa County, Superior Court of California, Case No. C26-01635)<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Action Filed:   May 13, 2026<br>Trial Date:   None Set |

**TO THE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant PHH Mortgage Corporation, now known as Onity Mortgage Corporation ("PHH" or "Defendant") hereby removes the state court action described below to this Court.

1.     On May 13, 2026, Plaintiff Luther K. Evans ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Contra Costa, styled as *Luther K. Evans v. PHH Mortgage Corporation et al.*, Case No. C26-01635

(the "State Court Action"). A copy of the Complaint as well as the case docket is attached hereto as **Exhibit 1**.

2.      Plaintiff served the Complaint on Defendant on May 20, 2026.

3.      This notice of removal is timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days following service of summons upon Defendant. A copy of all pleadings, process, and orders served on the removing defendants in the state action is attached hereto as **Exhibit 2**. *See* 28 USC § 1446(a).

4.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and which may be removed to this Court by Defendant under 28 U.S.C. § 1441 because the complaint asserts claims against Defendant arising under federal law. Specifically, the complaint asserts two claims against Defendant arising from the Truth in Lending Act, 15 U.S.C. § 1601, et seq., specifically, the claims labeled by Plaintiff as the third and fourth causes of action.

5.      Because the complaint was filed in the Contra Costa Superior Court, venue is proper in this Court. *See* 28 U.S.C. § 1441(a).

6.      At the time of filing this removal, no other defendants have been served with Plaintiff's Complaint to Defendant's knowledge.

7.      Defendants will give notice of the filing of this notice of removal to the Contra Costa County Superior Court and to Plaintiff promptly after filing this notice of removal, in compliance with 28 U.S.C. § 1446(d).

Dated:  June 22, 2026                    **WOMBLE BOND DICKINSON (US) LLP**


By:      _____*/s/ Owen Campbell*_____
            Owen Campbell
            Andrew Yu-Chih

            Attorney for Defendant
            PHH MORTGAGE
            CORPORATION

# EXHIBIT 1

Electronically Filed Superior Court of CA County of Contra Costa 5/13/2026 11:45 AM By: C. Padilla, Deputy

CDLG, PC
Tony Cara, Esq., SBN 170720
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com

Per local Rule, This case is assigned to
Judge Hiramoto, Joni T., for all purposes.

Attorney for Plaintiff,
Luther K. Evans, Successor in Interest to Floria Evans

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF CONTRA COSTA**

| | |
|---|---|
| LUTHER K. EVANS, Successor in Interest to Floria Evans,<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORPORATION; MORTGAGE ASSETS MANAGEMENT, LLC; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>SUMMONS ISSUED | CASE NO.:    C26-01635<br><br>PLAINTIFF'S VERIFIED COMPLAINT FOR:<br><br>1. VIOLATION OF CIV. CODE § 2923.5;<br>2. VIOLATION OF CIV. CODE § 2924.9;<br>3. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.35;<br>4. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.38;<br>5. MISREPRESENTATION<br>6. PROMISSORY ESTOPPEL;<br>7. UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;<br>8. WRONGFUL FORECLOSURE<br><br>(Amount in controversy less than $75,000) |

**COMES NOW** Plaintiff Luther K. Evans, Successor in Interest to Floria Evans ("PLAINTIFF"), by and through their counsel, alleges:

\\\

\\\

\\\

1

Evans v. PHH Mortgage Corp., et al.- Plaintiff's Verified Complaint

## PARTIES

1.     Plaintiff, Luther K. Evans, Successor in Interest to Floria Evans, is and at all relevant times mentioned herein was, the rightful and lawful owner of real property commonly known as 334 S. 18th St., Richmond, California 94804 ("Subject Property"), is their residence and they are the rightful owner of the Subject Property.

2.     PLAINTIFF is informed and believes and based thereon alleges Defendant PHH MORTGAGE CORPORATION ("PHH' DEFENDANT") is a corporation with its principal place of business in Mount Laurel, NJ 08054. PHH DEFENDANT conducts, and at all times mentioned herein conducted, business in Contra Costa County, California. PHH DEFENDANT is the purported current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

3.     PLAINTIFF is informed and believes and based thereon alleges Defendant Mortgage Assets Management, LLC, ("MAM DEFENDANT") is a Delaware Limited Liability Company with its principal place of business in Houston, Texas. MAM DEFENDANT conducts, and at all times mentioned herein conducted, business in Contra Costa County, California. Its agent for service of process is Corporate Creations Network, Inc. MAM DEFENDANT is the purported current beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

4.     PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues them by fictitious names. PLAINTIFF will amend this complaint to allege DOES' true names and capacities when they are ascertained.

5.     PLAINTIFF alleges that DOES 1-10 claim some right, title, estate, lien or interest in the Subject Property that is adverse to PLAINTIFF's own title. Each of these claims constitutes a cloud on PLAINTIFF's title to the Subject Property from which PLAINTIFF seeks relief.

6.     PLAINTIFF alleges that DOES 1-10 are contractually, strictly, negligently, intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted to PLAINTIFF as hereinafter alleged.

\\\

\\\

2

## JURISDICTION AND VENUE

7.    Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ. Proc.* §410.10 et seq. because DEFENDANTS engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and substantial justice." DEFENDANTS herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California, such as PLAINTIFF herein. As a result, DEFENDANTS caused an event or events to occur in California, and more particularly in Richmond, California, out of which this action arises, and which forms the basis of this action.

8.    Venue is proper in this Court pursuant to *Code Civ. Proc.* § 392(a) because DEFENDANTS' liability to PLAINTIFF arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. PLAINTIFF is a resident of Richmond, California. All DEFENDANTS regularly engage in business within Contra Costa County, California, and the real property is located in Contra Costa County, California.

9.    PLAINTIFF is suing for damages that are related to violation various California statutes, including but not limited to, the California Homeowner Bill of Rights Act and Federal Regulations lending regulations Under Regulation Z, among others, among other violations wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## GENERAL AND FACTUAL ALLEGATIONS

10.    PLAINTIFF alleges that on or about February 28, 2006, his mother, Floria Evans, as Trustee of the Floria Evans Revocable Living Trust Dated 5/12/2005 obtained a reverse mortgage loan on the Subject Property from Financial Freedom Senior Funding Corporation in the amount of up to a maximum principal of $544,185.00, memorialized by a Deed of Trust. The Trustee was delineated as Alliance Title, CA. This Deed of Trust was recorded in the Contra Costa County, California Recorder's Office on February 14, 2006 as Document No. 2006-0047656-00. This is a Home Equity Conversion Deed of Trust (HECM) (**Exhibit "A," Deed of Trust**).

11.    PLAINTIFF alleges that on or about September 30, 2009, an Assignment of the Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 2009-0231304-00. This assignment purported to assign the Deed of Trust from Financial Freedom Senior Funding Corporation to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Financial Freedom Acquisition, LLC. **(See Exhibit "C," Assignment of Deed of Trust)**

12.    PLAINTIFF alleges that on or about August 12, 2024, an Assignment of the Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 20240077466. This assignment purported to assign the Deed of Trust from MERS to Mortgage Assets Management, LLC. **(See Exhibit "D," Assignment of Deed of Trust).**

13.    On June 10, 2024, PLAINTIFF'S mother passed away. **(See Exhibit "B" Death Certificate)**

14.    The reverse mortgage at issue is a Home Equity Conversion Mortgage ("HECM") implemented by Housing and Urban Development ("HUD").

15.    HECM's provide a mechanism for elderly homeowners to convert "a portion of accumulated home equity into liquid asset." 12 USC §1715z-20(a). When an elderly homeowner enters into a reverse mortgage, he receives some combination of a lump sum payment, monthly payments, or a line of credit. This is a non-recourse loan and is secured by a mortgage on the borrower's house.

16.    Because collateral loss may result if the value of the home is less than the outstanding balance when the loan comes due, congress enacted an insurance program administered by HUD.

17.    This case in part concerns the failure of DEFENDANTS to abide by a key term of the federally insured reverse mortgages that DEFENDANT PHH MORTGAGE and MORTGAGE ASSETS has bought/sold and or serviced.

18.    Under the HECM program, when a loan becomes due and payable, the borrower or the borrower's estate, heirs/and or representatives, have a right to receive a 30-day notice that they may sell or repurchase the HECM mortgaged property for 95% of its current appraised value ("the 95% rule") which amount may be less than the mortgage balance. 24 C.F.R. § 206.125(c)

19.    HECM regulations also provide that any sale by a "mortgagor" is intended to include "the mortgagor's estate or personal representative." 24 C.F.R. § 206.123(b). A recent interpretation by

HUD has clarified that a sale includes "any post death conveyance of the mortgage property (even by operation of law) to the borrower's estate or heirs (including a surviving spouse who is not obligated on the HECM note).

20.    HUD instructs the lender to notify the borrower, or his estate, heirs, or personal representatives, of their rights regarding the loan payoff. Section 13-33 of the HUD Manual provides guidance for the lender when the loan becomes due and payable. Section 13-34 further provides, "The Field Office may authorize the mortgage to delay the beginning of foreclosure proceedings longer than 3 months if a sale by the mortgagor or the estate is in process." HUD may grant the borrower or estate up to 1 year in which to sell the property or more based on a showing of progress.

21.    HUD makes clear that if, at any time, the mortgagor or estate offers a payoff, "the mortgagee shall discontinue the foreclosure proceedings and accept the payoff." HECM Manual Section 13-34 (C).

22.    PLAINTIFF is the heir/successor and current administrator of his now deceased mother and holder of this reverse mortgage insured by HUD.

23.    PLAINTIFF alleges at the time of his mother's death the Trustee of his mother's Estate as named in her Trust was Emma Miles (hereinafter "Trustee").

24.    PLAINTIFF alleges that on or about July 16, 2024, the Estate Trustee, Ms. Miles called PHH to advise of the death of the borrower. PHH inquired regarding the intentions regarding the property.

25.    PLAINTIFF alleges Ms. Miles asked about eligibility for an heir pay off discount or refinancing the property to pay off the reverse mortgage.

26.    PLAINTIFF alleges PHH instructed Trustee Miles to fill out Heir Payoff acknowledgment letter and she did so immediately.

27.    PLAINTIFF alleges sent Ms. Miles received an email from PHH heir payoff on **August 16, 2024,** stating in part, *"The loss mitigation department received your request for an Heir Payoff workout. Please be prepared to receive further instructions throughout the process. Please be advised, the Heir Payoff will only be an option when the interior appraisal value is lower than the total payoff*

*balance. A reduced settlement offer will then be provided at 95% of the approved appraised value. Please complete the attached acknowledgement form."*

28.    PLAINTIFF alleges Ms. Miles submitted the form requested in response the August 16, 2024, email.

29.    PLAINTIFF alleges that on or about September 11, 2024, PHH received the document and stated they will order an appraisal. Trustee also submitted the 95 % heir payoff acknowledgement form as instructed.

30.    PLAINTIFF alleges they requested a another heir payoff in early October 2024.

31.    PLAINTIFF alleges that on or about October 9, 2024, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 2024-0099494.  **(See Exhibit "E," Notice of Default and Election to Sell Under a Deed of Trust).**

32.    PLAINTIFF alleges PHH provided a payoff on October 17, 2024, which was good through October 31, 2024.

33.    PLAINTIFF alleges PHH needed to complete the appraisal in furtherance of the loan. PHH scheduled an appraisal for October 18, 2024, with Shona Somboli.

34.    PLAINTIFF alleges he was working with American Mortgage to pay off the reverse mortgage but there were title issues that needed to be corrected before a loan could fund.

35.    PLAINTIFF alleges that on or about November 1, 2024, he sought the assistance of Golden YEARS loan to refinance as American Mortgage was not responsive to their needs.

36.    PLAINTIFF alleges Trustee Miles was in constant communication with PHH providing weekly updates regarding progress of the refinance.

37.    PLAINTIFF alleges PHH sent a letter to Trustee Miles with very complex instructions to payoff and specific title & recording instructions.

38.    PLAINTIFF alleges that on or about December 10, 2024, PHH sent a letter denying the 95% heir payoff due to current statement expiring.

39.    PLAINTIFF alleges Trustee Miles called PH on December 17th, 2024, to explain the progress of financing to pay off loan.

6

40. PLAINTIFF alleges, PHH denies the heir payoff but will be postponing the sale to Decemeber 8, 2025.

41. PLAINTIFF sends PHH a pre-approval letter on December 5, 2025, but cannot close on the loan because the payoff expired.

42. PLAINTIFF alleges Trustee Miles was notified that PHH started foreclosure proceedings during a time when it was believed PHH was working with the Estate to perform the intent of "Heir payoff". Trustee Miles was advised by PHH that the property was not being sold, and they were working towards the heir payoff and appraisal. Not to be concerned.

43. PLAINTIFF alleges they continued to work towards obtaining financing to pay off the loan, the only issue remaining was the deed transfer post death.

44. PLAINTIFF alleges that as part of the payoff process, the lender is required to provide an heir payoff. The payoff must be up to date and valid, as a requirement for funding.

45. PLAINTIFF alleges that this was a constant issue with DEFENDANT. As they would be ready to close on their end, and then the payoff would expire.

46. PLAINTIFF alleges, the appraisal must also be up to date, as a requirement of the heir payoff process and the appraisal is done by DEFENDANT lender.

47. PLAINTIFF alleges they played this payoff and appraisal game for months.

48. PLAINTIFF alleges that on or about May 2, 2025, a Notice of Trustee's Sale was recorded in the Contra Costa County, California Recorder's Office as Instrument No. 2025-0043165. **(See Exhibit "F," Notice of Trustee's Sale)**. The sale was set for July 2, 2025.

49. PLAINTIFF alleges that on or about May 12, 2025, PHH requested a 2nd appraisal with Nick Stoffregen.

50. PLAINTIFF alleges that on May 15, 2025, PHH sent a limited time offer with an updated payoff valid through 6-27-25. **(SEE EXHIBIT "G").**

51. PLAINTIFF alleges that by July 2, 2025, PHH sent a foreclosure sale letter stating the sale would take place on July 2, 2025. Ms. Miles contacted PHH for an extension of time to complete loan payoff.

52.    PLAINTIFF alleges they had to find a new lender last minute because the lender they had contracted with (GOLDEN YEARS MORTGAGE) was unable to provide the necessary expertise with issues regarding how the trust deed was recorded. However, PLAINTIFF quickly secured a new lender that was able to perform the necessary process to correct the property deeds to allow Mr. Evans to record his name as the property owner.

53.    PLAINTIFF alleges PHH received funding update and specific deed recording update and consequently, postponed the sale to from 7-2-25 to 8-4-25.

54.    PLAINTIFF alleges that on 7-28-25, Ms. Miles updated PHH as to the aforementioned deed issue, and PHH agreed to put a hold on the foreclosure sale. However, PHH denied the 95% payoff due to the expiration of the loan payoff statement. Once again, this same issue.

55.    PLAINTIFF alleges the sale was postponed to August 4, 2025, and then again to September 3, 2025, to allow time for PHH to provide an updated heir payoff.

56.    PLAINTIFF alleges Trustee Miles emails PHH to notify them of closing update and that the loan was still in progress. The loan would be paid 50% in cash and 50% by the new loan obtained by heir/plaintiff Luther Evans.

57.    PLAINTIFF alleges, that the foreclosure proceedings were proceeding even though they were actively proceeding towards obtaining a loan for PLAINTIFF, Mr. Luther Evans as he was the heir of Estate. PLAINTIFF Evans is the beneficiary of the subject property under his mother's Trust.

58.    PLAINTIFF alleges that they only needed a few more days to close on the loan and the loan had taken extra time to close because the heir payoff kept expiring and the appraisals had to be done by PHH and would also take time and delay the process.

59.    PLAINTIFF requests the December 8, 2026, sale be postponed so that PHH can perform their appraisal. PHH postpones sale to February 9, 2026.

60.    PLAINTIFF alleges PHH denied heir payoff of $466, 4450 due to expired statement date of 1-12-26 and needed to perform another appraisal.

61.    PLAINTIFF alleges that on 2-3-26 Trustee Miles requested another postponement so that PHH could perform their appraisal and provide another updated payoff statement. As these two items must be valid in order for the loan to close and PHH is fully aware of these facts.

62.    PLAINTIFF alleges that on 2-5-26 PHH DEFENDANT agreed to a 9 day extension to postpone the sale until 2-18-26; however, the heir payoff was once again DENIED due to no current appraisal on the property.

63.    PLAINTIFF alleges that on 2-6-26 Mr. Evans lender and title company sent PHH an urgent request to postpone the sale and allow time to close the loan.

64.    PLAINTIFF alleges that on 2-10-26 PHH performed an exterior appraisal which valued the property at $480,000.

65.    PLAINTIFF alleges that on 2-10-26, PHH stated the heir payoff was ineligible for a workout due to the foreclosure being within 8 days and no further extensions would be granted. They stated this knowing that the loan could not fund because the appraisal that THEY REQUIRE was not completed until 2-20-26.

66.    PLAINTIFF requested a 30-day extension and requested a reinstatement of 95% heir payoff.

67.    PHH denied heir payoff and request for one last postponement was denied.

68.    One day before the sale, on 2-17-26, Trustee Miles and Mr. Evans called PHH and spoke with ALEX to request one last short postponement and was advised to send a copy of loan approval and loan amount applied for. This was sent immediately by email.

69.    PLAINTIFF alleges that on the date of the sale 2-18-26, Ms. Miles called PHH at 8am, 10am, 12PM, and no response to request to postpone the 1:30 sale. At around 12:30 they spoke with ANNA she confirmed all documents had been received and advised the investor was emailing with postponement.

70.    PLAINTIFF alleges he understood the sale would be postponed thus forewent filing a bankruptcy that morning and instead appeared at the foreclosure auction.

71.    PLAINTIFF alleges PLAINTIFF Evans appeared at the auction and attempted to bid with his loan documents but the auctioner, name MIKE called PHH on the phone and told Mr. Evans that PHH had in-fact postponed the sale for 30 days so he could close on the loan. Mike was on the phone with PHH.

72. On or about 2-24-26 Ms. Miles emailed PHH because people started trying to break into the property and change their locks. They were very confused.

73. Ms. Miles called PHH this same day 2-24-26, and Joanna told them the sale was 100% NOT postponed and the house had gone back to the bank to the "recovery department" (REO).

74. It was clear that PHH was constantly sabotaging the closing of the loan timeline by providing notices that the loan payoff would expire that were within the 37 days PHH required for validity of payoff. The lender had to constantly change the loan amount due to the short duration of the payoff dates. Then, the appraisal would expire, creating a vexing hamster wheel; where the PLAINTIFF was chasing the closing date but never able to obtain it due to PHH's delays.

75. The house went back to the bank as an REO 2-18-26, contrary to what PLAINTIFF was informed of at the auction.

76. PLAINTIFF further alleges that after seeing a person who represented themselves as being part of the REO department with PHH trying to change the locks to his house, that he and Trustee Miles emailed PHH on February 25, 2026, to get answers as to why the house had sold even though they had been told all the needed to send was lender approval and a document showing the loan amount requested; and on February 17, 2026 they had in-fact emailed this and informed by 2 different people the sale was postponed 30 days. **(SEE EXHIBIT I, email to PHH)**

77. PLAINTIFF alleges they received a response email completely ignoring the representations that the sale would be postponed and instead stated a loan application was not proof of loan amount. PLAINTIFF was bewildered since they sent loan approval and loan amount and were told it was received and consequently, that the sale would be postponed as they were satisfied with this proof. At no time did any representative state they received a loan application. Because they did not receive a loan application. This was entirely fabricated to avoid liability for calling the sale. **(SEE EXHIBIT J, email response from PHH).**

## CAUSES OF ACTION/REMEDIES

## FIRST CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2923.5; FAILING TO NOTIFY THE HOMEOWNER ABOUT NOTICE OF DEFAULT

**(AGAINST PHH DEFENDANT and MAM DEFENDANT)**

78. PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

79. Pursuant to *Civ. Code* § 2923.5(a)(2), a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until all of the following: Contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, including advising the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.

80. On October 9, 2024, PHH DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. PLAINTIFF received no mail or messages from PHH DEFENDANT.

81. PHH DEFENDANT failed to satisfy the requirements of *Civ. Code* § 2923.5(a)(2) before recording a Notice of Default and violated this statute.

82. PLAINTIFF requests an injunction and damages.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2924.9, FAILURE TO PROVIDE HOMEOWNER WITH FORECLOSURE ALTERNATIVES

**(AGAINST PHH DEFENDANT and MAM DEFENDANT)**

83. PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

84. On October 9, 2024, PHH DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. PLAINTIFF received no mail or messages from PHH DEFENDANT. **(Exhibit "E")**

11

85.    PHH DEFENDANT failed to notify PLAINTIFF of all foreclosure prevention alternatives within 5 business days after Notice of Default recorded, as required by *Civ. Code* § 2924.9.

86.    PLAINTIFF was the owner of the Subject Property when the Notice of Default was recorded. PLAINTIFF did not receive any phone calls or phone messages and did not receive any pieces of mail that referred to discussions about alternatives to foreclosure before it was commenced. If PLAINTIFF did receive such contact and communication, they would have taken action to avoid the foreclosure of the Subject Property with other lending sources.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.35

## (AGAINST PHH DEFENDANT and MAM DEFENDANT)

87.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

88.    Title 12 CFR states a servicer must provide the successor in interest written information with respect to any loan.

89.    PHH DEFENDANT failed to provide PLAINTIFF any written information regarding the loan or attempt to assist in its policy and procedures to open up loss mitigation.

90.    PHH DEFENDANT's violation of Title 12 § 1024.35 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

91.    PHH DEFENDANT's violation of Title 12 § 1024.35 entitles them to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

92.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

93.    PLAINTIFF is entitled to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.38

## (AGAINST PHH DEFENDANT and MAM DEFENDANT)

94.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

95. Title 12 CFR § 1024.38 states a servicer is required to confirm the potential identity and ownership interest in the property must be reasonable. PHH DEFENDANT did performed no. due diligence to confirm the identity of PLAINTIFF, thus violating § 1024.38.

96. PHH DEFENDANT violated Title 12 CFR § 1024.38(b)(2)as they did not properly evaluate any loss mitigation applications or provide the successor in interest (PLAINTIFF) any information to complete the task of loss mitigation.

97. PHH DEFENDANT violated Title 12 CFR § 1024.38(b)(23)(v) as they did not provide PLAINTIFF any policy or procedures that was in place to evaluate for loss mitigation option consistent with any owners or assignee requirements.

98. PHH DEFENDANT's violation of Title 12 § 1024.38 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

99. PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

/// 

/// 

/// 

## FIFTH CAUSE OF ACTION

## MISREPRESENTION

## (AGAINST ALL DEFENDANTS)

100. PLAINTIFF realleges and incorporate all preceding paragraphs as though set forth fully herein.

101. DEFENDANT PHH advised Trustee Miles who acted on behalf of PLAINTIFF that as long as progress updates regarding the payoff of the home were provided the home would not be placed in foreclosure and that they would have at least one year with possible extensions so long as the progress towards the end goal (pay off) was provided.

102. PLAINTIFF complied and timely updates as discussed supra. PLAINTIFF through Trustee Miles sent weekly updates throughout the entire process.

13

103.    DEFENDANT provided extensions because of the progress being made; however, PHH DEFENDANT also impeded much of the progress because of the delays in getting out the appraisers and because of the short duration in the validity (good-through period) of the heir payoffs.

104.    PHH advised multiple times not to worry about the "foreclosure" being initiated so long as the progress was being made and updates received.

105.    The final straw came at the very end when PHH once again dragged their feet and the final appraisal they required was not done and received until 2-12-26 with the sale date still scheduled for 2-18-26.

106.    PLAINTIFF alleges that on 2-18-26 they were told by both ANNA from PHH and by MIKE the auctioneer who had PHH on the phone, that the sale would be postponed, otherwise, Mr. Evans whose name was now on title, would have filed a BK that morning. Instead, he believed what PHH representatives informed and thought he would have the additional 30 days to close.

107.    DEFENDANTS knew their representations were false or made with reckless disregard to induce PLAINTIFF and string him along; leaving him with no time to avail himself of other options to save the equity in the home. Such as, a TRO in probate court or even a bankruptcy to allow for the extra days to close on the loan.

108.    PLAINTIFF relied on these representations to his detriment and lost the family home And the additional surplus equity along with it.

109.    Plaintiff demands the sale be rescinded so that he can close on the loan in the alternative an award of monetary damages. The amount of these damages shall be determined at trial.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

### (AGAINST ALL DEFENDANTS)

110.    PLAINTIFF realleges and incorporate all preceding paragraphs as though set forth fully herein.

111.    The elements of promissory estoppel are; (1) a promise clear and unambiguous (2)

14

reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; (4) the party relied on the promise to his detriment.

112.    **PLAINTIFF** detrimentally relied on DEFENDANT'S statements and promises that the Home would not go into foreclosure and he would have upto 1 year with the possibility of additional 90 day extensions from the death of his mother to perform his intent of paying off the property as long as he provided updates of his progress.

113.    Plaintiff submitted all the required documents proving he was the sole heir and Trustee Miles provided weekly updates on his progress for obtaining the loan and getting title transferred into his name.

114.    PLAINTIFF provided documentation each week of the progress but the delays in the heir payoff and appraisals were always a constant factor in delaying the process.

115.    **On** February 17, 2026, Alex with PHH requested a copy of the loan approval and the loan application page confirming the $480,000 loan amount in furtherance of postponing the sale. (SEE **EXHIBIT H).**

116.    **On February 18, 2026, PLAINTIFF spoke with ANNA who confirmed receipt of all Documents and that the investor was emailing confirming the postponement. However, this turned out to be false. Moreover, Mike who was conducting the auction advised PLAINTIFF that PHH had postponed the sale 30 days, as he was on the phone with PHH. PLAINTIFF left the foreclosure auction under the belief the sale was postponed and did not file a bankruptcy; which he was prepared to file and had his petition ready to go.**

117.    Defendants decided to not uphold their end of the agreement and proceeded to foreclose. However, the home went back to the bank. REO.

118.    PLAINTIFF relied on the representations of DEFENDANTS to her detriment and suffered the loss of the family home his mother worked so hard to purchase and pay.

119.    PLAINTIFF forewent filing a TRO in probate court as he thought he'd get the additional postponements.

120. Plaintiff demands a TRO to stop the bank from evicting him and rescind the sale so he can complete the closing of the loan. In the alternative an award of monetary damages. The amount of these damages shall be determined at trial.

## SEVENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.

### (AGAINST PHH DEFENDANT and MAM DEFENDANT)

121. PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

122. Under California's Unfair Competition Law, California Business & Professions Code §17200 et seq. ("UCL"), unfair competition includes any "unlawful", "unfair" or "fraudulent" business act or practice. Cal. Bus. & Prof. Code §17200.

123. The practices of conduct of Defendants as described herein violate numerous laws and public policies of CA. Including but not limited to:

a. Defendants' failure to allow an opportunity to sell or transfer the property for 95% of the appraised value, pursuant to HUD procedures violates 12 U.S.C §1715z-20; 24 C.F.R. 206.1 et seq;

b. Defendants' failure to implement proper procedures that facilitate communication between the successors, heirs, or personal representatives of the Estate in their intent to to sell or transfer the property for 95% of the appraised value as required under the rules and regulations set out in the HECM statutes 12 USC 12 U.S.C §1715z-20.

c. Failing to provide timely payoff statement under 12 CFR §1026.36(c) so that he could finalize the loan to pay off the reverse mortgage loan.

d. Failing to have proper procedures and policies to ensure that they promptly facilitate communication with any potential or confirmed successor in interest after notice is given of the death of the borrower as required under Under 12 C.F.R § 1204.38(b)(1)(vi)(A). Defendant simply sent a notice advising the successors, heirs, or personal representatives to send all required documentation to the email indicated on the notice, but no further instructions were provided. There was no communication or updates provided once the emails were sent. The emails were automated. Thus, PLAINTIFF and those similarly situated would have no way of knowing whether their requested intent to pay off or sell the property is being reviewed or what they have to do next.

e. Failing to comply with 24 C.F.R. §206.125(b) and (c) which requires PHH to obtain an appraisal prior to conducting a foreclosure sale and to allow the estate to sell the property to satisfy the reverse mortgage loan.

124. PLAINTIFF alleges that DEFENDANTS negligently made false representations. DEFENDANT's negligent conduct is likely to deceive members of the public generally because the notice they sent out after being notified of the borrower's death, advising the estate/heir/successor/representative that they can sell or pay off the property does not provide any actual assistance with such actions as described herein.

125. The requirements to close are largely dependent on DEFENDANT SERVICER's ability to get payoff statements and appraisals done in a timely manner so that the timelines line up. If one item takes too long the other item because stale and invalid and must be done again.

126. Precisely what occurred in PLAINTIFF's situation. He believed everything was

progressing and he was sending all the updates required but then he was lied to at the very end by being told he would have another 30 days to close; he only needed a few days because of the delay of the 3rd and final appraisal PHH required.

127. PLAINTIFF alleges that DEFENDANT violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFF when they:

128. These acts and more are unlawful and unfair conduct has caused substantial harm to PLAINTIFF and the California citizenry at large.

129. A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

130. In the present case, the information provided to PLAINTIFF; most notably that he would have 1 year to sell with additional time if progress was shown; this was certainly misleading. In fact, he was not provided the additional 30 day postponement even though he followed through with all of the DEFENDANTS requirements and they sold his family home. These actions are inconsistent with HUD requirements and policies and violate public policy.

131. PLAINTIFF has suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for DEFENDANT's wrongful actions.

132. Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.*, 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFFS have stated a viable UCL claim.

133. PLAINTIFF demands an injunction to stop the UD and any recording of TDUS and a rescission to allow him to close on the loan as promised. In the alternative monetary damages.

## EIGHTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE

## (AGAINST ALL DEFENDANTS)

132. PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

134. DEFENDANTS foreclosed on the Subject Property.

135. BOTH DEFENDANTS caused an illegal, fraudulent, or willfully oppressive sale of the Subject Property pursuant to a power of sale in a mortgage or deed of trust.

136. PLAINTIFF is excused from the tender requirement because that's precisely what they were attempting to do, tender all the amount due.

137. PLAINTIFF is entitled to monetary damages for the loss of additional equity of the Subject Property and his investment in it.

138. Under the HECM program, CELINK failed to provide borrowers estate, and or heirs to payoff the mortgaged property for 95% of its current appraised value ("the 95% rule") which amount may be less than the mortgage balance.

139. PLAINTIFF is entitled to have the wrongful foreclosure vacated, and have the Trustee's Deed Upon Sale, Notice of Default and Notice of Trustee's Sale cancelled.

140. PLAINTIFF is entitled to punitive damages for wrongful foreclosure. See *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 345. The managing agents of PHH and MAM DEFENDANTS were responsible for setting this illegal and unauthorized foreclosure and related tort actions.

## PRAYER FOR RELIEF

1. For compensatory, special and general damages in an amount subject to proof at trial;

2. For civil penalties pursuant to *Civ. Code* § 2924.12 (b) for the greater of treble damages or $50,000.

3. For an injunction enjoining DEFENDANTS from conducting further foreclosure activity in particular, recording a Notice of Default, Notice of Trustee's Sale and/or conducting a Trustee's Sale, or recording a Trustee's Deed Upon Sale against the Subject Property pursuant to *Civ. Code* § 2924.12(b);

4. For restitution and the disgorgement of profits;

5. For an injunction stopping the violations of the HBOR statutes;

6. For an injunction cancelling the void or voidable written instruments;

7. For actual damages for violation of Title 12 § 1026.41 and Title 15 U.S. Code § 1640(a).

8. For a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j);

9. For attorney's fees pursuant to *Civ. Code* § 1788.30(c);

10. For an order awarding PLAINTIFF reasonable attorney's fees pursuant to *Civ. Code* § 2924.12 (h);

11. For reasonable costs of suit pursuant to *Code Civ. Proc.* § 1032;

12. For recompense of damages and arrears; and

13. For any other relief as it may deem just and proper.

DATED: May 7, 2026                                       CDLG, PC

BY:    _____
Tony Cara, Esq.,
Attorney for Plaintiff, Luther K. Evans,
Successor in Interest to Floria Evans

EXHIBIT "A"

Record and Return to:
**FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION , A SUBSIDIARY OF
INDYMAC BANK, F.S.B.**

**500 NORTH RIDGE ROAD STE. 500
ATLANTA, GEORGIA 30350**

Prepared by:
**FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION , A SUBSIDIARY OF
INDYMAC BANK, F.S.B.**

**3009 DOUGLAS BLVD STE 210
ROSEVILLE, CALIFORNIA 95661**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0047656-00**
Check Number
Tuesday, FEB 14, 2006 11:43:52
MIC    $1.00 MOD    $10.00 REC    $14.00
TCF    $0.00 DAF    $1.00 REF    $0.20
Ttl Pd    $36.00    Nbr-0003120290
lrc/R9/1-10

_____ [Space Above This Line For Recording Data] _____

State of California                          FHA Case No.    042-7943606-952/255
                                                             3000020226

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION DEED OF TRUST

### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

THIS DEED OF TRUST ("Security Instrument") is made on  FEBRUARY 08, 2006          . The trustor is
FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUSTOR AND
TRUSTEE

whose address is 334 SOUTH 13TH STREET,
RICHMOND, CALIFORNIA 94804                                       ("Borrower"). The trustee is
ALLIANCE TITLE, CA
("Trustee"). The beneficiary is
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION , A SUBSIDIARY OF
INDYMAC BANK, F.S.B.                                                          , which is
organized and existing under the laws of  THE STATE OF DELAWARE          , and whose address is
3009 DOUGLAS BLVD STE 210, ROSEVILLE, CALIFORNIA 95661

                                                                        ("Lender").
Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances,
under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument
("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security
Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a
maximum principal amount of
FIVE HUNDRED FORTY FOUR THOUSAND ONE HUNDRED EIGHTY FIVE AND 00/100 - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $  544,185.00          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this
purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in  CONTRA COSTA                    County, California:

SF41 : 06/04                                    Page 1

047656

**SEE LEGAL DESCRIPTION ATTACHED ON EXHIBIT A**

which has the address of   334 SOUTH 18TH STREET

[Street]

RICHMOND                  ,          CALIFORNIA                94804           ("Property Address");
[City]                                   [State]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

02XA: 02/02                                   Page 2

047656

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the Indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 02/02                                          Page 3

047656

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within  SIXTY DAYS                    from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to  SIXTY DAYS          from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

047656

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

047656

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted under applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on

047656

Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of   6.1000 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of   MAY, 2006            , and on   ☐ that day of each succeeding year
☒ · the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above   .
SIXTEEN AND 100/1000                         percent (   16.10000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

26. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

047656

**27. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

**28. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
FLORIA EVANS            -Borrower                                -Borrower

SEE ATTACHED SIGNATORY EXHIBIT INCORPORATED HEREIN BY THIS REFERENCE

[Space Below This Line For Acknowledgment]

STATE OF California          COUNTY OF Contra Costa

On 2/8/04          before me, Raymond Manguerra, Notary Public personally appeared

Floria Evans

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

WITNESS my hand and official seal.

_____          (Seal)

NOTARY MUST PRINT OR TYPE
This must be printed or typed in a manner that is photographically reproducible (GC27201.5)

Name of the notary: Raymond Manguerra

County of notary's principal place of business: Solano

Notary's phone number: (707) 428-6902

Notary's registration number: 1605902

Commission expiration date: 9/11/09

65SK: 05/04                    Page 8

RAYMOND MANGUERRA
Commission # 1605902
Notary Public - California
Solano County
My Comm. Expires Sep 11, 2009

047656
3000020226

## SIGNATURE EXHIBIT

_Floria Evans as trustee_

Floria Evans, as trustee

49SG ; 01/04

047656

## Exhibit A

**DESCRIPTION:**

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA.

LOT 5 AND 6 IN BLOCK 15, AS DESIGNATED ON THE MAP ENTITLED (WALL'S HARBOR CENTER TRACT, CITY OF RICHMOND, CONTRA COSTA COUNTY, CALIFORNIA). WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, ON MARCH 3, 1913 IN VOLUME 9 OF MAPS AT PAGE 207.

**APN:**   544-163-033

**END OF DOCUMEN**

EXHIBIT "B"

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF CONTRA COSTA
MARTINEZ, CALIFORNIA

**CERTIFICATE OF DEATH**

STATE FILE NUMBER: 3052024128496

LOCAL REGISTRATION NUMBER: 3202407003768

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT–FIRST (Given) | FLORIA |
| 2. MIDDLE | - |
| 3. LAST (Family) | EVANS |
| 4. DATE OF BIRTH | 08/10/1918 |
| 5. AGE YRS. | 105 |
| 7. SEX | F |
| 8. BIRTH STATE/FOREIGN COUNTRY | AR |
| 10. LOCAL SECURITY NUMBER | ███-███-9176 |
| 11. EVER IN U.S. ARMED FORCES? | NO |
| 12. MARITAL STATUS | WIDOWED |
| 13. DATE OF DEATH | 06/10/2024 |
| 14. HOUR | 2111 |
| EDUCATION | HS GRADUATE |
| HISPANIC | NO |
| RACE | BLACK |
| 17. USUAL OCCUPATION | HOMEMAKER |
| 18. KIND OF BUSINESS OR INDUSTRY | OWN HOME |
| 19. YEARS IN OCCUPATION | 85 |
| 20. DECEDENT'S RESIDENCE | 334 SOUTH 18TH STREET |
| 21. CITY | RICHMOND |
| 22. COUNTY/PROVINCE | CONTRA COSTA |
| 7L ZIP CODE | 94804 |
| 24. YEARS IN COUNTY | 81 |
| 25. STATE/FOREIGN COUNTRY | CA |
| 26. INFORMANT'S NAME, RELATIONSHIP | CARRETHA WALKER, DAUGHTER |
| 27. INFORMANT'S MAILING ADDRESS | 5020 NUNN STREET, RICHMOND, CA 94804 |
| NAME OF SURVIVING SPOUSE–FIRST | - |
| LAST (BIRTH NAME) | - |
| 31. NAME OF FATHER/PARENT–FIRST | JOHNNY |
| 33. LAST | FORD |
| 34. BIRTH STATE | AR |
| 35. NAME OF MOTHER/PARENT–FIRST | EMMA |
| 37. LAST (BIRTH NAME) | SHEPARD |
| 39. BIRTH STATE | OK |
| 38. DISPOSITION DATE | 06/29/2024 |
| 40. PLACE OF FINAL DISPOSITION | ROLLING HILLS MEMORIAL PARK, 4100 HILLTOP DRIVE, RICHMOND, CA 94803 |
| 41. TYPE OF DISPOSITION(S) | BURIAL |
| 42. SIGNATURE OF EMBALMER | CRAIG ANTHONY WILLIS |
| 43. LICENSE NUMBER | EMB9023 |
| 44. NAME OF FUNERAL ESTABLISHMENT | STEWARTS ROSE MANOR FUNERAL SERVICE |
| 45. LICENSE NUMBER | FD254 |
| 46. SIGNATURE OF LOCAL REGISTRAR | ORI TZVIELI, MD |
| 47. DATE | 06/20/2024 |
| 101. PLACE OF DEATH | KAISER FOUNDATION HOSPITAL - RICHMOND CAMPUS |
| 102. IF HOSPITAL, SPECIFY ONE | IP |
| 104. COUNTY | CONTRA COSTA |
| 105. FACILITY ADDRESS | 901 NEVIN AVENUE |
| 106. CITY | RICHMOND |

**107. CAUSE OF DEATH**

| | Cause | Interval |
|---|---|---|
| IMMEDIATE CAUSE (A) | SHOCK | HOURS |
| Due to (B) | COVID -19 | DAYS |
| Due to (C) | | |
| Due to (D) | | |

108. BIOPSY PERFORMED: NO

109. AUTOPSY PERFORMED: NO

110. AUTOPSY PERFORMED: NO

111. USED IN DETERMINING CAUSE: NO

Death reported to coroner: YES — 2024-3052

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH: SEVERE PROTEIN CALORIE MALNUTRITION, CHRONIC ANEMIA, ACUTE METABOLIC, HEART FAILURE REDUCED EJECTION FRACTION, ENCEPHALOPATHY

113. WAS OPERATION PERFORMED FOR ANY CONDITION: NO

114. CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED

Attended: 06/08/2024 — Last seen: 06/10/2024

115. SIGNATURE AND TITLE OF CERTIFIER: HONG-ZHUAN TANG, MD

116. LICENSE NUMBER: A66170

117. DATE: 06/12/2024

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE: NICOLE CLAIRE DEVALLE, MD, 901 NEVIN AVENUE, RICHMOND, CA 94801

119. MANNER OF DEATH: Natural

CACONTRAD2

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Contra Costa County Recorder.

ATTEST _____

DATE ISSUED 07/11/2024

000034556

Kristin B. Connelly
KRISTIN B. CONNELLY
COUNTY RECORDER

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Deputy Recorder.

# EXHIBIT "C"

Not for Official Use : This copy has not been QUALITY ASSURED.

RECORDING REQUESTED BY

NAME: DocSolution, Inc.

WHEN RECORDED MAIL TO:

NAME: DOCSOLUTION, INC.

ADDRESS: 2316 SOUTHMORE

CITY/STATE/ZIP: PASADENA, TX 77502

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0077466**
Monday, Aug 12, 2024 08:35:00
SB2 Fee: $75.00

Total Paid: $96.00          Receipt #: 202400073668
9 - Ingeo                            209 / AGPC2 / 1-3

*SR0001218676S*

(SPACE ABOVE FOR RECORDER'S USE)

Assignment of Deed of Trust
**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Requested By And
After Recording Return To:

**DS DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928
DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to preparer by Grantor/Grantee and/or their Agent.

# ASSIGNMENT OF DEED OF TRUST

Client Id: RMS/FCAOL
Loan #: 212207-ER



*750680 2*

Min: 1008549-3000020226-0        MERS Phone: 1-888-679-6377

*FOR VALUE RECEIVED,* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY , whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS, does hereby assign and transfer to MORTGAGE ASSETS MANAGEMENT, LLC, forever and without recourse, whose address is 14405 Walters Road, Suite 200, Houston, TX 77014, all its right, title and interest in and to a certain deed of trust from FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUS TOR AND TRUSTEE to FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B for $544,185.00, dated 2/8/2006 of record on 2/14/2006 as Document 2006-0047656-00, in the CONTRA COSTA County Recorder's Office, State of CALIFORNIA.

Property Address: 334 SOUTH 18TH STREET, RICHMOND, CALIFORNIA 94804
Parcel: 544-163-033

Not for Official Use : This copy has not been QUALITY ASSURED.

Executed this ___8/8/2024___.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS

By: _____CAROL CRISWELL_____
Title: ASSISTANT SECRETARY

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared CAROL CRISWELL, ASSISTANT SECRETARY known to me (or proved to me on the oath of _____), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, A DELAWARE CORPORATION, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this __8__ day of ___Aug___ A.D.2024.

Notary Public in and for the State of Texas
Notary's Printed Name: _____
My Commission Expires: _____

Cyndhya. Cuadra
My Commission Expires
11/21/2026
Notary ID 134074756

DOT for $544,185.00 dated 2/8/2006

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

# EXHIBIT "D"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
Financial Freedom
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 3000020226
Effective Date: 05/01/2009



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2009-0231304-00**
Check Number
Wednesday, SEP 30, 2009 12:16:48
MOD    $1.00:REC    $5.00:FTC    $0.00
DAF    $2.70:REF    $0.30:RED    $1.00
**Ttl Pd    $10.00**        Nbr-0000271124
                              dar/R7/1-1

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, WHOSE ADDRESS IS 190 TECHNOLOGY PARKWAY SUITE 100 , NORCROSS, GA 30092 by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNEE)
Said Deed made by FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005 FLORIA EVANS TRUSTOR AND TRUSTEE and recorded on 02/14/2006 as Inst# 2006-0047656-00 in Book , Page in the office of the CONTRA COSTA County Recorder, California.
Property more commonly known as: 334 SOUTH 18TH STREET, RICHMOND, CA 94804

THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FINANCIAL FREEDOM SENIOR FUNDING CORPORATION.

Dated:09/24/2009
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

By:_____
CRYSTAL MOORE    VICE PRESIDENT

STATE OF FLORIDA        COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me THIS 24TH DAY OF SEPTEMBER IN THE YEAR 2009 by CRYSTAL MOORE, well known to me to be the VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a corporation on behalf of the corporation.

_____
CHRISTOPHER JONES    Notary Public

My Commission expires:

> Christopher Jones
> Notary Public, State of Florida
> Commission # DD 811078
> Expires August 03, 2012
> Bonded Through National Notary Assn.

Prep by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

form5/FRMCA1

FFSAM 10310714 DB01 3 CJ2275892  MIN 100854930000202260 MERS PHONE 1-888-679-MERS



*10310714*

# EXHIBIT "E"

not for Official Use This copy has not been QUA...

*$R00012537 33$*

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0099494**
Wednesday, Oct 9, 2024 10:57:00
SB2 Fee: $75.00

**RECORDING REQUESTED BY:**

Slate Mortgage Solutions

Total Paid: $98.00          Receipt #: 202400093992

9 - Ingeo                    199 / CARRIEPC / 1-3

**WHEN RECORDED MAIL TO:**

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

APN: 544-162-003-5 FKA 544-162-003      TS No: CA07000940-24-1          TO No: S-LH-CA-177465-TSG

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息总摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recording appears on this notice).

This amount is $513,657.60 as of October 8, 2024, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

... ... ... ...... ... ...... ... ...... ... (QUALITY ASSURED)

APN: 544-162-003-5 FKA 544-162-003    TS No: CA07000940-24-1    TO No: S-LH-CA-177465-TSG

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Mortgage Assets Management, LLC c/o MTC Financial Inc. dba Trustee Corps located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 711 949.252.8300 Ref No: CA07000940-24-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of February 8, 2006, executed by FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUSTOR AND TRUSTEE, as Trustor(s), to secure obligations in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B. , the original Beneficiary, recorded February 14, 2006, as Instrument No. 2006-0047656-00, of the official records in the Office of the Recorder of Contra Costa County, California, and is subject to the terms and conditions contained therein.

THE SUBJECT DEED OF TRUST IS A REVERSE MORTGAGE THAT BECAME ALL DUE AND PAYABLE ON June 10, 2024 FOR THE FOLLOWING BREACH: Failed to pay the principal balance which became all due and payable based upon the death of all mortgagors

The Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to, the obligations set forth in a Promissory Note with a face amount of $544,185.00, and that a breach and default of the obligations for which said Deed of Trust is security has occurred in that the Trustor(s) has failed to perform obligations pursuant to or under the Note and/or the Deed of Trust. By reason thereof, the present Beneficiary under such Deed of Trust, has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: October 8, 2024              MTC Financial Inc. dba Trustee Corps
                                    as Duly Appointed Successor Trustee


                                    By: Bernardo Sotelo, Authorized Signatory

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

[NOT FOR Official USE This copy has not been QUALITY ASSURED]

Declaration of Mortgage Servicer Pursuant to
Civil Code § 2923.55(c)

Borrower(s):        Estate of Floria Evans
Mortgage Servicer:  PHH Mortgage Services
Property Address:   334 South 18th Street, Richmond, CA 94804

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐   The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since the initial contact was made.

☐   Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(e), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☒   No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5. Floria Evans is deceased

☐   The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, or the loan is not secured by owner-occupied residential real property as described in Civil Code § 2924.15(a).

☐   With respect to California Civil Code §3273.10, the mortgage servicer received a request for a forbearance/an extension in connection with COVID-19 from the borrower, and such request was denied. A copy of the written notice is attached; AND a forbearance/an extension ☐ was or ☐ was not subsequently provided.

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 7/10/2024
PHH Mortgage Services

A. Isaac

*A. Isaac*

California Uniform Declaration of Compliance, 03/22/2021

# EXHIBIT "F"

Not for Official Use : This copy has not been QUALITY ASSURED.

*S R 0 0 0 1 3 8 0 3 3 2 S *

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2025-0043165**
Friday, May 2, 2025 14:05:00
SB2 Fee: $75.00

RECORDING REQUESTED BY:

Slate Mortgage Solutions

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

Total Paid: $98.00            Receipt #: 202600044402

9 - Ingeo                                220 / ABPC / 1-3

---

TS No: CA07000940-24-1        APN: 544-162-003-5 FKA 544-162-003        TO No: S-LH-CA-177465-TSG

## NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
[The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).]

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED February 8, 2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD·CONTACT A LAWYER.**

On July 2, 2025 at 01:30 PM, at the north side of the Pittsburg Civic Center near the grass located at 69 Civic Avenue, Pittsburg, CA 94565, MTC Financial Inc. dba Trustee Corps, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on February 14, 2006 as Instrument No. 2006-0047658-00, of official records in the Office of the Recorder of Contra Costa County, California, executed by FLORIA EVANS REVOCABLE LIVING TRUST DATED 8/12/2005, FLORIA EVANS TRUSTOR AND TRUSTEE, as Trustor(s), in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B. as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: 334 SOUTH 18TH STREET, RICHMOND, CA 94804

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No: CA07000940-24-1        APN: 544-162-003-5 FKA 544-162-003        TO No: S-LH-CA-177465-TSG

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $480,868.14 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the Internet Website address www.nationwideposting.com or call Nationwide Posting & Publication at 916.939.0772 for information regarding the Trustee's Sale for information regarding the sale of this property, using the file number assigned to this case, CA07000940-24-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No: CA07000940-24-1          APN: 544-162-003-5 FKA 544-162-003          TO No: S-LH-CA-177465-TSG

## Notice to Tenant

### NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 916.939.0772, or visit this internet website www.nationwideposting.com, using the file number assigned to this case CA07000940-24-1 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: April 30, 2025

MTC Financial Inc. dba Trustee Corps
TS No. CA07000940-24-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 711 949.252.8300

By: Loan Quema, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.nationwideposting.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Nationwide Posting & Publication AT 916.939.0772**

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

# EXHIBIT "G"

Estate of Floria Evans
334 South 18th Street
Richmond, CA 94804

Property Address:
334 South 18th Street
Richmond, CA 94804

## Re: PAYOFF STATEMENT

# LIMITED TIME OFFER

Please permit this letter to serve as the payoff statement required as defined by the Department of Housing and Urban Development for the purposes of settlement and payoff of the above-referenced reverse mortgage loan. Pursuant to regulation set forth under 24 CFR 206.125(c), the payoff amount accepted by the mortgagee shall be equal to 95% of the current appraised value of the property or the loan balance, whichever is less. The property's current appraised value Effective 05/08/2025.

| Balance Type | Total |
|---|---|
| Loan Balance | $530,362.69 |
| Appraised Value | $500,000.00 |
| 95% Payoff | $475,000.00 |

## Reduced payoff of $475,000.00 valid through 06/27/2025

**Payoff Instructions:**
This payoff settlement will satisfy the loan in full. Please include the loan number with your payment.
Funds must be made by wire or overnight a cashier's check or certified funds.
- **Wire: Texas Capital Bank, ABA #111017979, Account #2111078198**
- **Credit to Loan: 3000020226**
- **ACCOUNT NAME- PHH Mortgage Services**
- **Checks payable to:     PHH Mortgage Services**
  **PO BOX 24781 ATTN: RSVPO**
  **West Palm Beach, FL 33416**

If your mailing address has changed, please let us know in writing; otherwise, any funds in excess of the payoff amount will be returned to the mailing address listed above.

www.reverse.mortgagequestions.com                                                     R0385

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# EXHIBIT "H"

EXHIBIT #13 _____ 2-18-2026

 Gmail

Emma Evans <eem2estate@gmail.com>

\* INFORMATION SENT WHILE ON

## SKEY #212207 Floria Evans Estate Urgent Foreclosure Postponement Request Loan Amount Verification

PHONE WITH PHH DURING SALE.

1 message

Emma Evans <eem2estate@gmail.com>
To: preserve@phhreverse.com, "Heir.Payoffs" <Heir.Payoffs@phhreverse.com>

Wed, Feb 18, 2026 at 11:56 AM

Feb. 18, 2026

Dear PHH,
Attached you will find the loan amounts and information related to the approval letter for Luther Evans to pay off the property at 334 So. 18th Street Richmond Ca.
It is our hope that an extension will be granted to allow time to close this loan and prevent a foreclosure sale today.

Respectfully,
Emma Miles
Trustee

---

**3 attachments**



**Luther Evans Loan Documents Showing Loan Amts.jpeg**
4842K



**Luther Evans Loan Documents 2.jpeg**
3372K

**Luther Evans Approval Letter.pdf**
364K

EXHIBIT #13                    2-/19/2026

 **Gmail**                    Emma Evans <eem2estate@gmail.com>

---

## E Miles PHH Wrongful Sale Back to Beneficiary — LETTER SENT TO
1 message                                LOS Mitigation AFTER

Emma Evans <eem2estate@gmail.com>        Foreclosu. Thu, Feb 19, 2026 at 9:47 AM
To: mhernandez@nacalossmit.org  ∠—      SALE .

February 19, 2026

Good Morning Miguel,

I am writing this letter on behalf of my sister Emma Miles, to inform you that yesterday a foreclosure sale was held by PHH and they sold my mothers home back to the beneficiary. The reason this is troubling to us, is that PHH requested loan approval which was provided to them and they wanted to confirm the loan amount applied for.
 We sent over on Feb. 17th, the approval letter for our brother Luther and next they requested the document showing the loan amount requested. So on Feb. 18th we called that morning and Alex from PHH said send over the document to stop the sale and we did. Since we did not hear back, we called over again and PHH said they had received the documents, this was at 1:30pm the time of the sale. Ann from PHH placed me on hold while she told me she was sending an email to stop the sale. However, while I was on hold with PHH, my brother Luther who attended the sale stated that at around 1:45 the Trustee called the property. Although no one bid and PHH was not there and no representative attended, the Trustee just said 334 S. 18th Street will go back to the beneficiary. The sale was called while PHH foreclosure had me on hold, misleading me into thinking the sale had been postponed to allow Luther to finish the loan process.

Emma, wanted to let you know what happend to see if there is anything we could do about this, it feels like duel tracking. Several questionable things that happened in the last few weeks leading up to this point. PHH had received communications from the lender and title group so they knew the loan was close to completion. I have attached the documents sent to PHH to postpone the sale that they requested. However, they went ahead with the sale while I was online with them as they told me they were sending the email to stop the sale.

Thank you for your help,
Flo Jones for Emma Miles

---

**3 attachments**


**Luther Evans Loan Documents Showing Loan Amts.jpeg**
4842K


**Luther Evans Loan Documents 2.jpeg**
3372K



EXHIBIT #13 ⚹ FEB 18, 2026 SALE

## Property Search Detail

| | |
|---|---|
| Status: | Sold back to beneficiary for: $470,000.00 |
| APN: | 544-162-003-5 FKA 544-162-003 |
| TS Number: | CA07000940-24-1 |
| Sale Date: | 02/18/2020 |
| Sale Time: | 1:30 PM |
| Sale County: | CONTRA COSTA |
| Property Address: | 334 SOUTH 18TH STREET<br>RICHMOND, CA 94804 |
| Sale Location: | At the north side of the Pittsburg Civic Center near the grass located at 65 Civic Avenue, Pittsburg, CA 94565 |
| Final Bid: | $470,000.00 |

NOTE TO ANY ELIGIBLE POST SALE BIDDERS: If the property is subject to CA Civil Code §2924f and 2924m and you are an eligible post sale tenant buyer or eligible post sale bidder as defined in CA Civil Code §2924m you must timely send your written notice of intent to bid and/or a post-sale bid to the trustee, Trustee Corps,17100 Gillette Ave., Irvine, CA, 92614 as required pursuant to CA Civil Code § 2924m. This NOTE is provided solely for the purpose of providing the trustee's mailing address and should not be taken as legal advice. If you think you may qualify as an eligible post sale tenant buyer or eligible post sale bidder you should consider contacting an attorney or appropriate real estate professional for advice.

Nationwide Posting & Publication

TRUSTEE told LuTHER HE HAD
uNTil MARCH 18, 2026 TO CompIETE
LoAN to PURCHASE HOME BACK TROM PHH.

Home | Services | Contact | Trustee Sale Information | Login | Privacy Policy

First American Title Insurance Company, and the operating divisions thereof, make no express or implied warranty respecting the information presented and assume no responsibility for errors or omissions. First American and the eagle logo are registered trademarks or trademarks of First American Financial Corporation and/or its affiliates.

©2026 First American Financial Corporation and/or its affiliates. All rights reserved.

# EXHIBIT "I"

$E x H i B i t \# 14$    $R e s p o n s c$
$R e c' D\ 2/25/2026$

 **Gmail**

## SKEY #212207 Estate of Floria Evans Foreclosure Information
1 message

**Emma Evans** <eem2estate@gmail.com>                    Tue, Feb 24, 2026 at 9:41 AM
To: preserve@phhreverse.com, "Heir.Payoffs" <Heir.Payoffs@phhreverse.com>

Feb. 24, 2025

To Heir Payoff, Phh Preserve, Foreclosure Dept, Loss Mitigation,

As the Trustee for the Floria Evas Estate, I contacted PHH on Feb 17, 2026 and spoke to Alex whom, said a sale could be postponed if loan confirmation and loan amount information was received. The information was sent and the heir attended the trustee sale and was told by Mike the auction representative that he called PHH in front of the heir and told him PHH had given him until March 28, 2026 to complete the loan process for the property.

I am confused, and need to verify immediately the status of the extension we were told PHH granted. A guy representing PHH, appeared at the property on Feb. 23 attempting to break into the property to change the locks. Can you please verify the status of the promised extension.

Thank you
Emma Miles
Trustee

# EXHIBIT "J"

EXHIBIT # 13

**PHH**

**MORTGAGE**

PO Box 24606, West Palm Beach, FL 33416

*[handwritten, top right]* REC'D 2/25/2026
\* FIRST REQUEST FROM
PHH SINCE 2/13/2024
THEY WOULD NOT RESPOND
to OUR E-MAILS.

February 24, 2026

Loan Number: 3000020226
Loan Skey: 212207

Emma J. Miles
eem2estate@gmail.com

Property Address:
334 South 18th Street
Richmond, CA 94804

### RESPONSE LETTER FOR THE RECENT REQUEST

Dear Emma J. Miles,

Thank you for the recent communication regarding the account referenced above in which you submitted a foreclosure sale postponement request along with supporting documents.

We regret to inform you that we are unable to fulfill your request. Please be advised that the investor does not accept a loan application as valid proof of funds.

Our records indicate that the foreclosure sale was completed on February 18, 2026, and the account is now classified as Real Estate Owned (REO). Accordingly, we are unable to process a postponement of the sale. Additionally, California does not offer a post-sale redemption period. Therefore, no reinstatement or redemption options are available once the foreclosure sale has been finalized.

If you have questions, please call us at 866-799-7724 during regular business hours of 8:00 a.m. - 7:00 p.m. Eastern Time, Monday through Friday.

Sincerely,

Loan Servicing

*[handwritten]* ✱ PHH WAS SENT LOAN APPROVAL LETTER & THE COMPLETE APPLICATION SHOWING THE LOAN AMT APPLYED FOR to COVER THE LOAN PAYOFF.

**NMLS: 2726**       reverse.mortgagequestions.com
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to

## Case Information

C26-01635 | LUTHER K. EVANS, vs. PHH MORTGAGE CORPORATION

| Case Number | Court | Judicial Officer |
|---|---|---|
| C26-01635 | CV - Martinez-Wakefield Taylor Courthouse | Hiramoto, Joni T |

| File Date | Case Type | Case Status |
|---|---|---|
| 05/13/2026 | 26: Unlimited Other Real Property-eFile | Active |

## Party

**Plaintiff/Petitioner**
LUTHER K. EVANS,

**Active Attorneys ▼**
Lead Attorney
CARA, TONY
Retained

**Defendant/Respondent**
PHH MORTGAGE CORPORATION

**Defendant/Respondent**
MORTGAGE ASSETS MANAGEMENT, LLC

**Defendant/Respondent**
DOES 1-10, inclusive

## Events and Hearings

05/13/2026 Fee Paid

05/13/2026 Initial Complaint Filed ▼

Initial Complaint Filed

05/13/2026 Original Summons Issued/Filed ▼

Original Summons Issued/Filed

05/13/2026 Civil Case Cover Sheet ▼

Civil Case Cover Sheet

05/13/2026 Declaration Re: ▼

Declaration RE: PLAINTIFF'S VERIFICATION OF COMPLAINT

Comment
PLAINTIFF'S VERIFICATION OF COMPLAINT

05/13/2026 Service of Complaint and Summons ▼

Requested By
LUTHER K. EVANS,

Served
05/20/2026

Served
05/20/2026

05/21/2026 Proof of Service of Summons ▼

Proof of Service of Summons Mortgage Assets Management, LLC pers serv 5/20/26

Comment
Mortgage Assets Management, LLC pers serv 5/20/26

05/21/2026 Proof of Service of Summons ▼

Proof of Service of Summons PHH Mortgage Corporation pers serv 5/20/26

Comment
PHH Mortgage Corporation pers serv 5/20/26

09/16/2026 *Case Management Conference ▾

CMC Notice - Fast Track

Judicial Officer
Hiramoto, Joni T

Hearing Time
8:30 AM

## Documents

Initial Complaint Filed

Original Summons Issued/Filed

Civil Case Cover Sheet

Declaration RE: PLAINTIFF'S VERIFICATION OF COMPLAINT

CMC Notice - Fast Track

Proof of Service of Summons Mortgage Assets Management, LLC pers serv 5/20/26

Proof of Service of Summons PHH Mortgage Corporation pers serv 5/20/26

# EXHIBIT 2

Electronically Filed Superior Court of CA County of Contra Costa 5/13/2026 11:45 AM By: C. Padilla, Deputy

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PHH MORTGAGE CORPORATION; (See Additional Parties Attachment attached hereto)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LUTHER K. EVANS, Successor in Interest to Floria Evans

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* CONTRA COSTA SUPERIOR COURT

Wakefield Taylor Courthouse - 725 Court Street, Martinez, CA 94553

**CASE NUMBER:**
*(Número del Caso):* C26-01635

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tony Cara, Esq., CDLG, PC, 2973 Harbor Boulevard, Suite 594, Costa Mesa, CA 92626-3912 (888) 615-6765

| DATE: 5/13/2026 11:45 AM<br>*(Fecha)* | Clerk, by /s/ C. Padilla<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* PHH MORTGAGE CORPORATION

under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
|---|---|---|

Processed by Court on 5/19/2026 9:48 AM

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Evans v. PHH Mortgage Corporation, et al. | C26-01635 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff     ☑ Defendant     ☐ Cross-Complainant     ☐ Cross-Defendant

MORTGAGE ASSETS MANAGEMENT, LLC; and DOES 1-10, inclusive,

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Electronically Filed Superior Court of CA County of Contra Costa 5/13/2026 11:45 AM By: C. Padilla, Deputy

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 170720 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Tony Cara, Esq.<br>FIRM NAME: CDLG, PC<br>STREET ADDRESS: 2973 Harbor Boulevard, Suite 594<br>CITY: Costa Mesa    STATE: CA    ZIP CODE: 92626-3912<br>TELEPHONE NO.: (888) 615-6765    FAX NO.: (888) 660-8874<br>EMAIL ADDRESS: Litigation.CDLG@gmail.com<br>ATTORNEY FOR (name): Plaintiff, Luther K. Evans, Successor in Interest to Floria Evans | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  CONTRA COSTA
 STREET ADDRESS. 725 Court Street
 MAILING ADDRESS:
CITY AND ZIP CODE: Martinez 94553
  BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
  Evans v. PHH Mortgage Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: C26-01635 |
|---|---|---|
| [x] Unlimited    [ ] Limited<br>(Amount demanded exceeds $35,000)    (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Asbestos**
- [ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/Unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [x] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Employment Development Department (EDD)**
- [ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Comprehensive groundwater adjudication (47)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3



Processed by Court on 5/19/2026 9:48 AM

CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court?    ☐ Yes    ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. ☒ monetary

b. ☒ nonmonetary; declaratory or injunctive relief

c. ☒ punitive

4. Number of causes of action (specify): Six (6)

5. Is this case a class action suit?    ☐ Yes    ☒ No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 13, 2026

Tony Cara, Esq.
_____
(TYPE OR PRINT NAME)

▶ *Tony Cara*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---



## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**Civil Case Cover Sheet**

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA 94553
925-608-1000
www.cc-courts.org



S. Lind
Court Executive Officer

| CASE NAME: | CASE NUMBER: |
|---|---|
| LUTHER K. EVANS, VS. PHH MORTGAGE CORPORATION | C26-01635 |

1. NOTICE IS HEREBY GIVEN THAT A CASE MANAGEMENT CONFERENCE IS SET IN THE ABOVE ENTITLED CASE AND WILL BE HELD IN THIS COURT ON:

| HEARING DATE: | HEARING TIME: | HEARING LOCATION: |
|---|---|---|
| 09/16/2026 | 8:30 AM | DEPARTMENT 32 725 COURT STREET  ROOM 300  MARTINEZ, CA 94553 |

THIS FORM, A COPY OF THE NOTICE TO DEFENDANTS, THE ADR INFORMATION SHEET, A BLANK CASE MANAGEMENT STATEMENT, AND A BLANK ADR CASE MANAGEMENT STIPULATION AND ORDER FORM ARE TO BE SERVED ON OPPOSING PARTIES. ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY OF RECORD MUST APPEAR.

2. YOU MAY STIPULATE TO AN EARLIER CASE MANAGEMENT CONFERENCE. IF ALL PARTIES AGREE TO AN EARLY CASE MANAGEMENT CONFERENCE, PLEASE CONTACT THE COURT CLERK'S OFFICE AT (925)608-1000 FOR UNLIMITED CIVIL AND LIMITED CIVIL CASES FOR ASSIGNMENT OF AN EARLIER DATE.

3. YOU MUST BE FAMILIAR WITH THE CASE AND BE FULLY PREPARED TO PARTICIPATE EFFECTIVELY IN THE CASE MANAGEMENT CONFERENCE AND TO DISCUSS THE SUITABILITY OF THIS CASE FOR THE EASE PROGRAM, PRIVATE MEDIATION, BINDING OR NON-BINDING ARBITRATION, AND/OR USE OF A SPECIAL MASTER.

4. AT ANY CASE MANAGEMENT CONFERENCE THE COURT MAY MAKE PRETRIAL ORDERS INCLUDING THE FOLLOWING:
   a) AN ORDER ESTABLISHING A DISCOVERY SCHEDULE
   b) AN ORDER REFERRING THE CASE TO ARBITRATION
   c) AN ORDER TRANSFERRING THE CASE TO LIMITED JURISDICTION
   d) AN ORDER DISMISSING FICTITIOUS DEFENDANTS
   e) AN ORDER SCHEDULING EXCHANGE OF EXPERT WITNESS INFORMATION
   f) AN ORDER SETTING SUBSEQUENT CONFERENCE AND THE TRIAL DATE
   g) AN ORDER CONSOLIDATING CASES
   h) AN ORDER SEVERING TRIAL OF CROSS-COMPLAINTS OR BIFURCATING ISSUES
   i) AN ORDER DETERMINING WHEN DEMURRERS AND MOTIONS WILL BE FILED

### SANCTIONS

IF YOU DO NOT FILE THE CASE MANAGEMENT STATEMENT OR ATTEND THE CASE MANAGEMENT CONFERENCE OR PARTICIPATE EFFECTIVELY IN THE CONFERENCE, THE COURT MAY IMPOSE SANCTIONS (INCLUDING DISMISSAL OF THE CASE AND PAYMENT OF MONEY).

### SUPERIOR COURT OF CALIFORNIA, CONTRA COSTA COUNTY

I HEREBY CERTIFY THAT I AM THE CLERK OF THIS COURT, NOT A PARTY TO THIS CAUSE; THAT I SERVED A COPY OF THIS NOTICE ON THE BELOW DATE, BY ELECTRONIC SERVICE TO THE PARTIES OR THEIR COUNSEL OF RECORD AT THE EMAIL ADDRESSES SET FORTH BELOW AND SHOWN BY THE RECORDS OF THIS COURT, OR, IF A PHYSICAL MAILING ADDRESS IS PRESENT BELOW, BY PLACING THE DOCUMENT(S) IN AN ENVELOPE FOR COLLECTION AND MAILING, FOLLOWING THE COURT'S ORDINARY BUSINESS PRACTICES FOR COLLECTING AND PROCESSING CORRESPONDENCE FOR MAILING. ON THE SAME DAY THE CORRESPONDENCE IS PLACED FOR COLLECTION AND MAILING, IT IS DEPOSITED IN THE ORDINARY COURSE OF BUSINESS WITH THE UNITED STATES POSTAL SERVICE, IN A SEALED ENVELOPE WITH POSTAGE FULLY PREPAID.

DATE:  5/19/2026

BY:  /s/C. Padilla

C. PADILLA, DEPUTY CLERK

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA  94553
925-608-1000
www.cc-courts.org



S. Lind
Court Executive Officer

NOTICE OF HEARING HAS BEEN PRINTED FOR THE FOLLOWING ATTORNEYS/FIRMS OR PARTIES FOR CASE NUMBER: C26-01635 ON 5/19/2026:

TONY CARA
2973 HARBOR BLVD SUITE 594
COSTA MESA CA  92626
LITIGATION.CDLG@GMAIL.COM

Electronically Filed Superior Court of CA County of Contra Costa 5/13/2026 11:45 AM By: C. Padilla, Deputy

CDLG, PC
Tony Cara, Esq., SBN 170720
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com

Attorney for Plaintiff,
Luther K. Evans, Successor in Interest to Floria Evans

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

| | |
|---|---|
| LUTHER K. EVANS, Successor in Interest to Floria Evans, <br><br> Plaintiff, <br><br> v. <br><br> PHH MORTGAGE CORPORATION; MORTGAGE ASSETS MANAGEMENT, LLC; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.:    C26-01635 <br><br> PLAINTIFF'S VERIFICATION OF COMPLAINT. |

I, Luther K. Evans, declare and say:

1. I am the Plaintiff in the above-referenced matter.

2. I am the successor in interest to my Mother, Floria Evans, am the owner of and have resided at the real property located as 334 S. 18th St., Richmond, California 94804, (hereinafter "Subject Property").

3. I have reviewed the complaint drafted in my name, and I am aware of the statements made therein. I assert personal knowledge as to the facts contained within this complaint and assert that they are true and correct to the best of my knowledge.

I

Evans v. PHH Mortgage Corp., et al.- Plaintiff's Verification of Complaint

Processed by Court on 5/19/2026 9:48 AM

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

This declaration was executed on May 8, 2026 in Richmond, California.

*Luther K. Evans*

Luther K. Evans, Declarant

---

2

Evans v. PHH Mortgage Corp., et al.- Plaintiff's Verification of Complaint

Electronically Filed Superior Court of CA County of Contra Costa 5/13/2026 11:45 AM By: C. Padilla, Deputy

CDLG, PC
Tony Cara, Esq., SBN 170720
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com

Per local Rule, This case is assigned to
Judge Hiramoto, Joni T., for all purposes.

Attorney for Plaintiff,
Luther K. Evans, Successor in Interest to Floria Evans

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

LUTHER K. EVANS, Successor in Interest to Floria Evans,

Plaintiff,

v.

PHH MORTGAGE CORPORATION; MORTGAGE ASSETS MANAGEMENT, LLC; and DOES 1-10, inclusive,

Defendants.

SUMMONS ISSUED

CASE NO.:    C26-01635

PLAINTIFF'S VERIFIED COMPLAINT FOR:

1. VIOLATION OF CIV. CODE § 2923.5;
2. VIOLATION OF CIV. CODE § 2924.9;
3. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.35;
4. VIOLATION OF THE TRUTH IN LENDING ACT, TITLE 12 CFR § 1024.38;
5. MISREPRESENTATION
6. PROMISSORY ESTOPPEL;
7. UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;
8. WRONGFUL FORECLOSURE

(Amount in controversy less than $75,000)

**COMES NOW** Plaintiff Luther K. Evans, Successor in Interest to Floria Evans ("PLAINTIFF"), by and through their counsel, alleges:

\\\

\\\

\\\

1

Evans v. PHH Mortgage Corp., et al.- Plaintiff's Verified Complaint

## PARTIES

1.      Plaintiff, Luther K. Evans, Successor in Interest to Floria Evans, is and at all relevant times mentioned herein was, the rightful and lawful owner of real property commonly known as 334 S. 18th St., Richmond, California 94804 ("Subject Property"), is their residence and they are the rightful owner of the Subject Property.

2.      PLAINTIFF is informed and believes and based thereon alleges Defendant PHH MORTGAGE CORPORATION ("PHH' DEFENDANT") is a corporation with its principal place of business in Mount Laurel, NJ 08054. PHH DEFENDANT conducts, and at all times mentioned herein conducted, business in Contra Costa County, California. PHH DEFENDANT is the purported current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

3.      PLAINTIFF is informed and believes and based thereon alleges Defendant Mortgage Assets Management, LLC, ("MAM DEFENDANT") is a Delaware Limited Liability Company with its principal place of business in Houston, Texas. MAM DEFENDANT conducts, and at all times mentioned herein conducted, business in Contra Costa County, California. Its agent for service of process is Corporate Creations Network, Inc. MAM DEFENDANT is the purported current beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

4.      PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues them by fictitious names. PLAINTIFF will amend this complaint to allege DOES' true names and capacities when they are ascertained.

5.      PLAINTIFF alleges that DOES 1-10 claim some right, title, estate, lien or interest in the Subject Property that is adverse to PLAINTIFF's own title. Each of these claims constitutes a cloud on PLAINTIFF's title to the Subject Property from which PLAINTIFF seeks relief.

6.      PLAINTIFF alleges that DOES 1-10 are contractually, strictly, negligently, intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted to PLAINTIFF as hereinafter alleged.

\\\

\\\

2

## JURISDICTION AND VENUE

7.    Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ. Proc.* §410.10 et seq. because DEFENDANTS engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and substantial justice." DEFENDANTS herein purposefully directed their activities to the State of California and consummated a transaction with a resident of the State of California, such as PLAINTIFF herein. As a result, DEFENDANTS caused an event or events to occur in California, and more particularly in Richmond, California, out of which this action arises, and which forms the basis of this action.

8.    Venue is proper in this Court pursuant to *Code Civ. Proc.* § 392(a) because DEFENDANTS' liability to PLAINTIFF arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. PLAINTIFF is a resident of Richmond, California. All DEFENDANTS regularly engage in business within Contra Costa County, California, and the real property is located in Contra Costa County, California.

9.    PLAINTIFF is suing for damages that are related to violation various California statutes, including but not limited to, the California Homeowner Bill of Rights Act and Federal Regulations lending regulations Under Regulation Z, among others, among other violations wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## GENERAL AND FACTUAL ALLEGATIONS

10.    PLAINTIFF alleges that on or about February 28, 2006, his mother, Floria Evans, as Trustee of the Floria Evans Revocable Living Trust Dated 5/12/2005 obtained a reverse mortgage loan on the Subject Property from Financial Freedom Senior Funding Corporation in the amount of up to a maximum principal of $544,185.00, memorialized by a Deed of Trust. The Trustee was delineated as Alliance Title, CA. This Deed of Trust was recorded in the Contra Costa County, California Recorder's Office on February 14, 2006 as Document No. 2006-0047656-00. This is a Home Equity Conversion Deed of Trust (HECM) **(Exhibit "A," Deed of Trust).**

11.    PLAINTIFF alleges that on or about September 30, 2009, an Assignment of the Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 2009-0231304-00. This assignment purported to assign the Deed of Trust from Financial Freedom Senior Funding Corporation to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Financial Freedom Acquisition, LLC. **(See Exhibit "C," Assignment of Deed of Trust)**

12.    PLAINTIFF alleges that on or about August 12, 2024, an Assignment of the Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 20240077466. This assignment purported to assign the Deed of Trust from MERS to Mortgage Assets Management, LLC. **(See Exhibit "D," Assignment of Deed of Trust).**

13.    On June 10, 2024, PLAINTIFF'S mother passed away. **(See Exhibit "B" Death Certificate)**

14.    The reverse mortgage at issue is a Home Equity Conversion Mortgage ("HECM") implemented by Housing and Urban Development ("HUD").

15.    HECM's provide a mechanism for elderly homeowners to convert "a portion of accumulated home equity into liquid asset." 12 USC §1715z-20(a). When an elderly homeowner enters into a reverse mortgage, he receives some combination of a lump sum payment, monthly payments, or a line of credit. This is a non-recourse loan and is secured by a mortgage on the borrower's house.

16.    Because collateral loss may result if the value of the home is less than the outstanding balance when the loan comes due, congress enacted an insurance program administered by HUD.

17.    This case in part concerns the failure of DEFENDANTS to abide by a key term of the federally insured reverse mortgages that DEFENDANT PHH MORTGAGE and MORTGAGE ASSETS has bought/sold and or serviced.

18.    Under the HECM program, when a loan becomes due and payable, the borrower or the borrower's estate, heirs/and or representatives, have a right to receive a 30-day notice that they may sell or repurchase the HECM mortgaged property for 95% of its current appraised value ("the 95% rule") which amount may be less than the mortgage balance. 24 C.F.R. § 206.125(c)

19.    HECM regulations also provide that any sale by a "mortgagor" is intended to include "the mortgagor's estate or personal representative." 24 C.F.R. § 206.123(b). A recent interpretation by

HUD has clarified that a sale includes "any post death conveyance of the mortgage property (even by operation of law) to the borrower's estate or heirs (including a surviving spouse who is not obligated on the HECM note).

20. HUD instructs the lender to notify the borrower, or his estate, heirs, or personal representatives, of their rights regarding the loan payoff. Section 13-33 of the HUD Manual provides guidance for the lender when the loan becomes due and payable. Section 13-34 further provides, "The Field Office may authorize the mortgage to delay the beginning of foreclosure proceedings longer than 3 months if a sale by the mortgagor or the estate is in process." HUD may grant the borrower or estate up to 1 year in which to sell the property or more based on a showing of progress.

21. HUD makes clear that if, at any time, the mortgagor or estate offers a payoff, "the mortgagee shall discontinue the foreclosure proceedings and accept the payoff." HECM Manual Section 13-34 (C).

22. PLAINTIFF is the heir/successor and current administrator of his now deceased mother and holder of this reverse mortgage insured by HUD.

23. PLAINTIFF alleges at the time of his mother's death the Trustee of his mother's Estate as named in her Trust was Emma Miles (hereinafter "Trustee").

24. PLAINTIFF alleges that on or about July 16, 2024, the Estate Trustee, Ms. Miles called PHH to advise of the death of the borrower. PHH inquired regarding the intentions regarding the property.

25. PLAINTIFF alleges Ms. Miles asked about eligibility for an heir pay off discount or refinancing the property to pay off the reverse mortgage.

26. PLAINTIFF alleges PHH instructed Trustee Miles to fill out Heir Payoff acknowledgment letter and she did so immediately.

27. PLAINTIFF alleges sent Ms. Miles received an email from PHH heir payoff on **August 16, 2024,** stating in part, *"The loss mitigation department received your request for an Heir Payoff workout. Please be prepared to receive further instructions throughout the process. Please be advised, the Heir Payoff will only be an option when the interior appraisal value is lower than the total payoff*

*balance. A reduced settlement offer will then be provided at 95% of the approved appraised value. Please complete the attached acknowledgement form."*

28. PLAINTIFF alleges Ms. Miles submitted the form requested in response the August 16, 2024, email.

29. PLAINTIFF alleges that on or about September 11, 2024, PHH received the document and stated they will order an appraisal. Trustee also submitted the 95 % heir payoff acknowledgement form as instructed.

30. PLAINTIFF alleges they requested a another heir payoff in early October 2024.

31. PLAINTIFF alleges that on or about October 9, 2024, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Contra Costa County, California Recorder's Office as Document No. 2024-0099494. **(See Exhibit "E," Notice of Default and Election to Sell Under a Deed of Trust).**

32. PLAINTIFF alleges PHH provided a payoff on October 17, 2024, which was good through October 31, 2024.

33. PLAINTIFF alleges PHH needed to complete the appraisal in furtherance of the loan. PHH scheduled an appraisal for October 18, 2024, with Shona Somboli.

34. PLAINTIFF alleges he was working with American Mortgage to pay off the reverse mortgage but there were title issues that needed to be corrected before a loan could fund.

35. PLAINTIFF alleges that on or about November 1, 2024, he sought the assistance of Golden YEARS loan to refinance as American Mortgage was not responsive to their needs.

36. PLAINTIFF alleges Trustee Miles was in constant communication with PHH providing weekly updates regarding progress of the refinance.

37. PLAINTIFF alleges PHH sent a letter to Trustee Miles with very complex instructions to payoff and specific title & recording instructions.

38. PLAINTIFF alleges that on or about December 10, 2024, PHH sent a letter denying the 95% heir payoff due to current statement expiring.

39. PLAINTIFF alleges Trustee Miles called PH on December 17th, 2024, to explain the progress of financing to pay off loan.

6

40.    PLAINTIFF alleges, PHH denies the heir payoff but will be postponing the sale to Decemeber 8, 2025.

41.    PLAINTIFF sends PHH a pre-approval letter on December 5, 2025, but cannot close on the loan because the payoff expired.

42.    PLAINTIFF alleges Trustee Miles was notified that PHH started foreclosure proceedings during a time when it was believed PHH was working with the Estate to perform the intent of "Heir payoff". Trustee Miles was advised by PHH that the property was not being sold, and they were working towards the heir payoff and appraisal. Not to be concerned.

43.    PLAINTIFF alleges they continued to work towards obtaining financing to pay off the loan, the only issue remaining was the deed transfer post death.

44.    PLAINTIFF alleges that as part of the payoff process, the lender is required to provide an heir payoff. The payoff must be up to date and valid, as a requirement for funding.

45.    PLAINTIFF alleges that this was a constant issue with DEFENDANT. As they would be ready to close on their end, and then the payoff would expire.

46.    PLAINTIFF alleges, the appraisal must also be up to date, as a requirement of the heir payoff process and the appraisal is done by DEFENDANT lender.

47.    PLAINTIFF alleges they played this payoff and appraisal game for months.

48.    PLAINTIFF alleges that on or about May 2, 2025, a Notice of Trustee's Sale was recorded in the Contra Costa County, California Recorder's Office as Instrument No. 2025-0043165. **(See Exhibit "F," Notice of Trustee's Sale).** The sale was set for July 2, 2025.

49.    PLAINTIFF alleges that on or about May 12, 2025, PHH requested a 2nd appraisal with Nick Stoffregen.

50.    PLAINTIFF alleges that on May 15, 2025, PHH sent a limited time offer with an updated payoff valid through 6-27-25. **(SEE EXHIBIT "G").**

51.    PLAINTIFF alleges that by July 2, 2025, PHH sent a foreclosure sale letter stating the sale would take place on July 2, 2025. Ms. Miles contacted PHH for an extension of time to complete loan payoff.

52.    PLAINTIFF alleges they had to find a new lender last minute because the lender they had contracted with (GOLDEN YEARS MORTGAGE) was unable to provide the necessary expertise with issues regarding how the trust deed was recorded. However, PLAINTIFF quickly secured a new lender that was able to perform the necessary process to correct the property deeds to allow Mr. Evans to record his name as the property owner.

53.    PLAINTIFF alleges PHH received funding update and specific deed recording update and consequently, postponed the sale to from 7-2-25 to 8-4-25.

54.    PLAINTIFF alleges that on 7-28-25, Ms. Miles updated PHH as to the aforementioned deed issue, and PHH agreed to put a hold on the foreclosure sale. However, PHH denied the 95% payoff due to the expiration of the loan payoff statement. Once again, this same issue.

55.    PLAINTIFF alleges the sale was postponed to August 4, 2025, and then again to September 3, 2025, to allow time for PHH to provide an updated heir payoff.

56.    PLAINTIFF alleges Trustee Miles emails PHH to notify them of closing update and that the loan was still in progress. The loan would be paid 50% in cash and 50% by the new loan obtained by heir/plaintiff Luther Evans.

57.    PLAINTIFF alleges, that the foreclosure proceedings were proceeding even though they were actively proceeding towards obtaining a loan for PLAINTIFF, Mr. Luther Evans as he was the heir of Estate. PLAINTIFF Evans is the beneficiary of the subject property under his mother's Trust.

58.    PLAINTIFF alleges that they only needed a few more days to close on the loan and the loan had taken extra time to close because the heir payoff kept expiring and the appraisals had to be done by PHH and would also take time and delay the process.

59.    PLAINTIFF requests the December 8, 2026, sale be postponed so that PHH can perform their appraisal. PHH postpones sale to February 9, 2026.

60.    PLAINTIFF alleges PHH denied heir payoff of $466, 4450 due to expired statement date of 1-12-26 and needed to perform another appraisal.

61.    PLAINTIFF alleges that on 2-3-26 Trustee Miles requested another postponement so that PHH could perform their appraisal and provide another updated payoff statement. As these two items must be valid in order for the loan to close and PHH is fully aware of these facts.

62.    PLAINTIFF alleges that on 2-5-26 PHH DEFENDANT agreed to a 9 day extension to postpone the sale until 2-18-26; however, the heir payoff was once again DENIED due to no current appraisal on the property.

63.    PLAINTIFF alleges that on 2-6-26 Mr. Evans lender and title company sent PHH an urgent request to postpone the sale and allow time to close the loan.

64.    PLAINTIFF alleges that on 2-10-26 PHH performed an exterior appraisal which valued the property at $480,000.

65.    PLAINTIFF alleges that on 2-10-26, PHH stated the heir payoff was ineligible for a workout due to the foreclosure being within 8 days and no further extensions would be granted. They stated this knowing that the loan could not fund because the appraisal that THEY REQUIRE was not completed until 2-20-26.

66.    PLAINTIFF requested a 30-day extension and requested a reinstatement of 95% heir payoff.

67.    PHH denied heir payoff and request for one last postponement was denied.

68.    One day before the sale, on 2-17-26, Trustee Miles and Mr. Evans called PHH and spoke with ALEX to request one last short postponement and was advised to send a copy of loan approval and loan amount applied for. This was sent immediately by email.

69.    PLAINTIFF alleges that on the date of the sale 2-18-26, Ms. Miles called PHH at 8am, 10am, 12PM, and no response to request to postpone the 1:30 sale. At around 12:30 they spoke with ANNA she confirmed all documents had been received and advised the investor was emailing with postponement.

70.    PLAINTIFF alleges he understood the sale would be postponed thus forewent filing a bankruptcy that morning and instead appeared at the foreclosure auction.

71.    PLAINTIFF alleges PLAINTIFF Evans appeared at the auction and attempted to bid with his loan documents but the auctioner, name MIKE called PHH on the phone and told Mr. Evans that PHH had in-fact postponed the sale for 30 days so he could close on the loan. Mike was on the phone with PHH.

72.     On or about 2-24-26 Ms. Miles emailed PHH because people started trying to break into the property and change their locks. They were very confused.

73.     Ms. Miles called PHH this same day 2-24-26, and Joanna told them the sale was 100% NOT postponed and the house had gone back to the bank to the "recovery department" (REO).

74.     It was clear that PHH was constantly sabotaging the closing of the loan timeline by providing notices that the loan payoff would expire that were within the 37 days PHH required for validity of payoff. The lender had to constantly change the loan amount due to the short duration of the payoff dates. Then, the appraisal would expire, creating a vexing hamster wheel; where the PLAINTIFF was chasing the closing date but never able to obtain it due to PHH's delays.

75.     The house went back to the bank as an REO 2-18-26, contrary to what PLAINTIFF was informed of at the auction.

76.     PLAINTIFF further alleges that after seeing a person who represented themselves as being part of the REO department with PHH trying to change the locks to his house, that he and Trustee Miles emailed PHH on February 25, 2026, to get answers as to why the house had sold even though they had been told all the needed to send was lender approval and a document showing the loan amount requested; and on February 17, 2026 they had in-fact emailed this and informed by 2 different people the sale was postponed 30 days. **(SEE EXHIBIT I, email to PHH)**

77.     PLAINTIFF alleges they received a response email completely ignoring the representations that the sale would be postponed and instead stated a loan application was not proof of loan amount. PLAINTIFF was bewildered since they sent loan approval and loan amount and were told it was received and consequently, that the sale would be postponed as they were satisfied with this proof. At no time did any representative state they received a loan application. Because they did not receive a loan application. This was entirely fabricated to avoid liability for calling the sale. **(SEE EXHIBIT J, email response from PHH).**

**CAUSES OF ACTION/REMEDIES**

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIV.CODE §2923.5; FAILING TO NOTIFY THE HOMEOWNER ABOUT NOTICE OF DEFAULT**

**(AGAINST PHH DEFENDANT and MAM DEFENDANT)**

78.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

79.    Pursuant to *Civ. Code* § 2923.5(a)(2), a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until all of the following: Contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, including advising the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.

80.    On October 9, 2024, PHH DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. PLAINTIFF received no mail or messages from PHH DEFENDANT.

81.    PHH DEFENDANT failed to satisfy the requirements of *Civ. Code* § 2923.5(a)(2) before recording a Notice of Default and violated this statute.

82.    PLAINTIFF requests an injunction and damages.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIV.CODE §2924.9, FAILURE TO PROVIDE HOMEOWNER WITH FORECLOSURE ALTERNATIVES**

**(AGAINST PHH DEFENDANT and MAM DEFENDANT)**

83.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

84.    On October 9, 2024, PHH DEFENDANT recorded a Notice of Default on the Subject Property. PLAINTIFF owned the property and has lived within Subject Property years prior to foreclosure and when the Notice of Default was issued. PLAINTIFF received no mail or messages from PHH DEFENDANT. **(Exhibit "E")**

11

85.    PHH DEFENDANT failed to notify PLAINTIFF of all foreclosure prevention alternatives within 5 business days after Notice of Default recorded, as required by *Civ. Code* § 2924.9.

86.    PLAINTIFF was the owner of the Subject Property when the Notice of Default was recorded. PLAINTIFF did not receive any phone calls or phone messages and did not receive any pieces of mail that referred to discussions about alternatives to foreclosure before it was commenced. If PLAINTIFF did receive such contact and communication, they would have taken action to avoid the foreclosure of the Subject Property with other lending sources.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.35

## (AGAINST PHH DEFENDANT and MAM DEFENDANT)

87.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

88.    Title 12 CFR states a servicer must provide the successor in interest written information with respect to any loan.

89.    PHH DEFENDANT failed to provide PLAINTIFF any written information regarding the loan or attempt to assist in its policy and procedures to open up loss mitigation.

90.    PHH DEFENDANT's violation of Title 12 § 1024.35 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

91.    PHH DEFENDANT's violation of Title 12 § 1024.35 entitles them to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

92.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

93.    PLAINTIFF is entitled to a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j).

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACTION TITLE 12 C.F.R. § 1024.38

## (AGAINST PHH DEFENDANT and MAM DEFENDANT)

94.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

12

95.    Title 12 CFR § 1024.38 states a servicer is required to confirm the potential identity and ownership interest in the property must be reasonable. PHH DEFENDANT did performed no. due diligence to confirm the identity of PLAINTIFF, thus violating § 1024.38.

96.    PHH DEFENDANT violated Title 12 CFR § 1024.38(b)(2)as they did not properly evaluate any loss mitigation applications or provide the successor in interest (PLAINTIFF) any information to complete the task of loss mitigation.

97.    PHH DEFENDANT violated Title 12 CFR § 1024.38(b)(23)(v) as they did not provide PLAINTIFF any policy or procedures that was in place to evaluate for loss mitigation option consistent with any owners or assignee requirements.

98.    PHH DEFENDANT's violation of Title 12 § 1024.38 entitles them to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

99.    PLAINTIFF is entitled to actual damages for these violations pursuant to Title 15 U.S. Code § 1640(a).

///

///

///

## FIFTH CAUSE OF ACTION

## MISREPRESENTION

## (AGAINST ALL DEFENDANTS)

100.    PLAINTIFF realleges and incorporate all preceding paragraphs as though set forth fully herein.

101.    DEFENDANT PHH advised Trustee Miles who acted on behalf of PLAINTIFF that as long as progress updates regarding the payoff of the home were provided the home would not be placed in foreclosure and that they would have at least one year with possible extensions so long as the progress towards the end goal (pay off) was provided.

102.    PLAINTIFF complied and timely updates as discussed supra. PLAINTIFF through Trustee Miles sent weekly updates throughout the entire process.

13

103.    DEFENDANT provided extensions because of the progress being made; however, PHH DEFENDANT also impeded much of the progress because of the delays in getting out the appraisers and because of the short duration in the validity (good-through period) of the heir payoffs.

104.    PHH advised multiple times not to worry about the "foreclosure" being initiated so long as the progress was being made and updates received.

105.    The final straw came at the very end when PHH once again dragged their feet and the final appraisal they required was not done and received until 2-12-26 with the sale date still scheduled for 2-18-26.

106.    PLAINTIFF alleges that on 2-18-26 they were told by both ANNA from PHH and by MIKE the auctioneer who had PHH on the phone, that the sale would be postponed, otherwise, Mr. Evans whose name was now on title, would have filed a BK that morning. Instead, he believed what PHH representatives informed and thought he would have the additional 30 days to close.

107.    DEFENDANTS knew their representations were false or made with reckless disregard to induce PLAINTIFF and string him along; leaving him with no time to avail himself of other options to save the equity in the home. Such as, a TRO in probate court or even a bankruptcy to allow for the extra days to close on the loan.

108.    PLAINTIFF relied on these representations to his detriment and lost the family home And the additional surplus equity along with it.

109.    Plaintiff demands the sale be rescinded so that he can close on the loan in the alternative an award of monetary damages. The amount of these damages shall be determined at trial.

## SIXTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

### (AGAINST ALL DEFENDANTS)

110.    PLAINTIFF realleges and incorporate all preceding paragraphs as though set forth fully herein.

111.    The elements of promissory estoppel are; (1) a promise clear and unambiguous (2)

14

reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; (4) the party relied on the promise to his detriment.

112.   **PLAINTIFF** detrimentally relied on DEFENDANT'S statements and promises that the Home would not go into foreclosure and he would have upto 1 year with the possibility of additional 90 day extensions from the death of his mother to perform his intent of paying off the property as long as he provided updates of his progress.

113.   Plaintiff submitted all the required documents proving he was the sole heir and Trustee Miles provided weekly updates on his progress for obtaining the loan and getting title transferred into his name.

114.   PLAINTIFF provided documentation each week of the progress but the delays in the heir payoff and appraisals were always a constant factor in delaying the process.

115.   **On** February 17, 2026, Alex with PHH requested a copy of the loan approval and the loan application page confirming the $480,000 loan amount in furtherance of postponing the sale. (SEE EXHIBIT H).

116.   **On February 18, 2026, PLAINTIFF spoke with ANNA who confirmed receipt of all Documents and that the investor was emailing confirming the postponement. However, this turned out to be false. Moreover, Mike who was conducting the auction advised PLAINTIFF that PHH had postponed the sale 30 days, as he was on the phone with PHH. PLAINTIFF left the foreclosure auction under the belief the sale was postponed and did not file a bankruptcy; which he was prepared to file and had his petition ready to go.**

117.   Defendants decided to not uphold their end of the agreement and proceeded to foreclose. However, the home went back to the bank. REO.

118.   PLAINTIFF relied on the representations of DEFENDANTS to her detriment and suffered the loss of the family home his mother worked so hard to purchase and pay.

119.   PLAINTIFF forewent filing a TRO in probate court as he thought he'd get the additional postponements.

120.    Plaintiff demands a TRO to stop the bank from evicting him and rescind the sale so he can complete the closing of the loan. In the alternative an award of monetary damages. The amount of these damages shall be determined at trial.

## SEVENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.

### (AGAINST PHH DEFENDANT and MAM DEFENDANT)

121.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

122.    Under California's Unfair Competition Law, California Business & Professions Code §17200 *et seq.* ("UCL"), unfair competition includes any "unlawful", "unfair" or "fraudulent" business act or practice. Cal. Bus. & Prof. Code §17200.

123.    The practices of conduct of Defendants as described herein violate numerous laws and public policies of CA. Including but not limited to:

a.    Defendants' failure to allow an opportunity to sell or transfer the property for 95% of the appraised value, pursuant to HUD procedures violates 12 U.S.C §1715z-20; 24 C.F.R. 206.1 *et seq*;

b.    Defendants' failure to implement proper procedures that facilitate communication between the successors, heirs, or personal representatives of the Estate in their intent to to sell or transfer the property for 95% of the appraised value as required under the rules and regulations set out in the HECM statutes 12 USC 12 U.S.C §1715z-20.

c.    Failing to provide timely payoff statement under 12 CFR §1026.36(c) so that he could finalize the loan to pay off the reverse mortgage loan.

16

d. Failing to have proper procedures and policies to ensure that they promptly facilitate communication with any potential or confirmed successor in interest after notice is given of the death of the borrower as required under Under 12 C.F.R § 1204.38(b)(1)(vi)(A). Defendant simply sent a notice advising the successors, heirs, or personal representatives to send all required documentation to the email indicated on the notice, but no further instructions were provided. There was no communication or updates provided once the emails were sent. The emails were automated. Thus, PLAINTIFF and those similarly situated would have no way of knowing whether their requested intent to pay off or sell the property is being reviewed or what they have to do next.

e. Failing to comply with 24 C.F.R. §206.125(b) and (c) which requires PHH to obtain an appraisal prior to conducting a foreclosure sale and to allow the estate to sell the property to satisfy the reverse mortgage loan.

124.    PLAINTIFF alleges that DEFENDANTS negligently made false representations. DEFENDANT's negligent conduct is likely to deceive members of the public generally because the notice they sent out after being notified of the borrower's death, advising the estate/heir/successor/representative that they can sell or pay off the property does not provide any actual assistance with such actions as described herein.

125.    The requirements to close are largely dependent on DEFENDANT SERVICER's ability to get payoff statements and appraisals done in a timely manner so that the timelines line up. If one item takes too long the other item because stale and invalid and must be done again.

126.    Precisely what occurred in PLAINTIFF's situation. He believed everything was

progressing and he was sending all the updates required but then he was lied to at the very end by being told he would have another 30 days to close; he only needed a few days because of the delay of the 3rd and final appraisal PHH required.

127. PLAINTIFF alleges that DEFENDANT violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFF when they:

128. These acts and more are unlawful and unfair conduct has caused substantial harm to PLAINTIFF and the California citizenry at large.

129. A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

130. In the present case, the information provided to PLAINTIFF; most notably that he would have 1 year to sell with additional time if progress was shown; this was certainly misleading. In fact, he was not provided the additional 30 day postponement even though he followed through with all of the DEFENDANTS requirements and they sold his family home. These actions are inconsistent with HUD requirements and policies and violate public policy.

131. PLAINTIFF has suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for DEFENDANT's wrongful actions.

132. Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.*, 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFFS have stated a viable UCL claim.

133. PLAINTIFF demands an injunction to stop the UD and any recording of TDUS and a rescission to allow him to close on the loan as promised. In the alternative monetary damages.

## EIGHTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE

## (AGAINST ALL DEFENDANTS)

132.    PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

134.    DEFENDANTS foreclosed on the Subject Property.

135.    BOTH DEFENDANTS caused an illegal, fraudulent, or willfully oppressive sale of the Subject Property pursuant to a power of sale in a mortgage or deed of trust.

136.    PLAINTIFF is excused from the tender requirement because that's precisely what they were attempting to do, tender all the amount due.

137.    PLAINTIFF is entitled to monetary damages for the loss of additional equity of the Subject Property and his investment in it.

138.    Under the HECM program, CELINK failed to provide borrowers estate, and or heirs to payoff the mortgaged property for 95% of its current appraised value ("the 95% rule") which amount may be less than the mortgage balance.

139.    PLAINTIFF is entitled to have the wrongful foreclosure vacated, and have the Trustee's Deed Upon Sale, Notice of Default and Notice of Trustee's Sale cancelled.

140.    PLAINTIFF is entitled to punitive damages for wrongful foreclosure. See *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 345. The managing agents of PHH and MAM DEFENDANTS were responsible for setting this illegal and unauthorized foreclosure and related tort actions.

## PRAYER FOR RELIEF

1.  For compensatory, special and general damages in an amount subject to proof at trial;

2.  For civil penalties pursuant to *Civ. Code* § 2924.12 (b) for the greater of treble damages or $50,000.

3. For an injunction enjoining DEFENDANTS from conducting further foreclosure activity in particular, recording a Notice of Default, Notice of Trustee's Sale and/or conducting a Trustee's Sale, or recording a Trustee's Deed Upon Sale against the Subject Property pursuant to *Civ. Code* § 2924.12(b);

4. For restitution and the disgorgement of profits;

5. For an injunction stopping the violations of the HBOR statutes;

6. For an injunction cancelling the void or voidable written instruments;

7. For actual damages for violation of Title 12 § 1026.41 and Title 15 U.S. Code § 1640(a).

8. For a rescission of the loan pursuant to Title 15 C.F.R.§ 1639(j);

9. For attorney's fees pursuant to *Civ. Code* § 1788.30(c);

10. For an order awarding PLAINTIFF reasonable attorney's fees pursuant to *Civ. Code* § 2924.12 (h);

11. For reasonable costs of suit pursuant to *Code Civ. Proc.* § 1032;

12. For recompense of damages and arrears; and

13. For any other relief as it may deem just and proper.

DATED: May 7, 2026                                CDLG, PC


BY: _____
Tony Cara, Esq.,
Attorney for Plaintiff, Luther K. Evans,
Successor in Interest to Floria Evans

EXHIBIT "A"

Record and Return to:
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION , A SUBSIDIARY OF INDYMAC BANK, F.S.B.**

**500 NORTH RIDGE ROAD STE. 500 ATLANTA, GEORGIA 30350**

Prepared by:
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION , A SUBSIDIARY OF INDYMAC BANK, F.S.B.**

**3009 DOUGLAS BLVD STE 210 ROSEVILLE, CALIFORNIA 95661**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0047656-00**
Check Number
Tuesday, FEB 14, 2006 11:43:52
MIC    $1.00 MOD    $10.00 REC    $14.00
TCF    $9.00 DAF    $1.00 REF    $0.20
Ttl Pd    $36.00          Nbr-0003120290
                          lrc/R9/1-10

_____ [Space Above This Line For Recording Data] _____

State of California                    FHA Case No.    042-7943606-952/255
                                                       3000020226

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION DEED OF TRUST

### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

THIS DEED OF TRUST ("Security Instrument") is made on   FEBRUARY 08, 2006          . The trustor is FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUSTOR AND TRUSTEE

whose address is 334 SOUTH 19TH STREET,
RICHMOND, CALIFORNIA 94804                               ("Borrower"). The trustee is
ALLIANCE TITLE, CA
("Trustee"). The beneficiary is
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION , A SUBSIDIARY OF
INDYMAC BANK, F.S.B.                                                      , which is
organized and existing under the laws of  THE STATE OF DELAWARE          , and whose address is
3009 DOUGLAS BLVD STE 210, ROSEVILLE, CALIFORNIA 95661
                                                                      ("Lender").
Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
FIVE HUNDRED FORTY FOUR THOUSAND ONE HUNDRED EIGHTY FIVE AND 00/100 - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $  544,185.00           ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in  CONTRA COSTA              County, California:

SF41 : 06/04                              Page 1

047656

**SEE LEGAL DESCRIPTION ATTACHED ON EXHIBIT A**

which has the address of   334 SOUTH 18TH STREET
                                                    [Street]

RICHMOND          ,          CALIFORNIA          94804          ("Property Address");
[City]                                   [State]                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

02XA : 02/02                                      Page 2

047656

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the Indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

047656

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

047656

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 02/02                                      Page 5

047656

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted under applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on

01XB : 02/02                                    Page 6

047656

**Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of    6.1000 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of    MAY, 2006        , and on    ☐ that day of each succeeding year

☒  · the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐  (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒  (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above   .
SIXTEEN AND 100/1000                          percent (   16.10000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**26. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

047656

**27. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

**28. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider      ☐ Shared Appreciation Rider   ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)    _____ (Seal)
FLORIA EVANS              -Borrower                                -Borrower

SEE ATTACHED SIGNATORY EXHIBIT INCORPORATED HEREIN BY THIS REFERENCE

[Space Below This Line For Acknowledgment]

STATE OF California                COUNTY OF Contra Costa

On 2/8/04         before me,   Raymond Manguerra, Notary Public personally appeared

Floria Evans

~~personally known to me~~ or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

WITNESS my hand and official seal.

_____                                           (Seal)

NOTARY MUST PRINT OR TYPE
This must be printed or typed in a manner that is photographically reproducible (GC27201.5)

Name of the notary:  Raymond Manguerra

County of notary's principal place of business:  Solano

Notary's phone number:  (707) 428-6902

Notary's registration number:  1605902

Commission expiration date:  9/11/09

65SK : 05/04                                    Page 8

RAYMOND MANGUERRA
Commission # 1605902
Notary Public - California
Solano County
My Comm. Expires Sep 11, 2009

047656
3000020226

## SIGNATURE EXHIBIT

_Floria Evans, as trustee_
Floria Evans, as trustee

49SG : 01/04

047656

## Exhibit A

**DESCRIPTION:**

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA.

LOT 5 AND 6 IN BLOCK 15, AS DESIGNATED ON THE MAP ENTITLED (WALL'S HARBOR CENTER TRACT, CITY OF RICHMOND, CONTRA COSTA COUNTY, CALIFORNIA). WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, ON MARCH 3, 1913 IN VOLUME 9 OF MAPS AT PAGE 207.

**APN:** 544-163-033

**END OF DOCUMEN**

EXHIBIT "B"

# STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# COUNTY OF CONTRA COSTA
## MARTINEZ, CALIFORNIA

3052024128496

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA

3202407003768

| | | |
|---|---|---|
| 1. NAME OF DECEDENT—FIRST | 2. MIDDLE | 3. LAST (Family) |
| FLORIA | - | EVANS |

| AKA, ALSO KNOWN AS | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | 6. SEX |
|---|---|---|---|
| | 08/10/1918 | 105 | F |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS | 13. DATE OF DEATH mm/dd/ccyy | 14. HOUR 24 Hours |
|---|---|---|---|---|---|
| AR | ████-9176 | ☐ YES ☒ NO ☐ UNK | WIDOWED | 06/10/2024 | 2111 |

| 14. EDUCATION | | 16. DECEDENT'S RACE |
|---|---|---|
| HS GRADUATE | ☐ YES ☒ NO | BLACK |

| 17. USUAL OCCUPATION | 18. KIND OF BUSINESS OR INDUSTRY | 19. YEARS IN OCCUPATION |
|---|---|---|
| HOMEMAKER | OWN HOME | 85 |

20. DECEDENT'S RESIDENCE
334 SOUTH 18TH STREET

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| RICHMOND | CONTRA COSTA | 94804 | 81 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
|---|---|
| CARRETHA WALKER, DAUGHTER | 5020 NUNN STREET, RICHMOND, CA 94804 |

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| - | | - |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JOHNNY | | FORD | AR |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| EMMA | | SHEPARD | OK |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 06/29/2024 | ROLLING HILLS MEMORIAL PARK, 4100 HILLTOP DRIVE, RICHMOND, CA 94803 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BURIAL | CRAIG ANTHONY WILLIS | EMB9023 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| STEWARTS ROSE MANOR FUNERAL SERVICE | FD254 | ORI TZVIELI, MD | 06/20/2024 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| KAISER FOUNDATION HOSPITAL - RICHMOND CAMPUS | ☒ IP | |

| 104. COUNTY | 105. FACILITY ADDRESS | 106. CITY |
|---|---|---|
| CONTRA COSTA | 901 NEVIN AVENUE | RICHMOND |

| 107. CAUSE OF DEATH | | 108. Time Interval Onset and Death | 109. DEATH REPORTED TO CORONER |
|---|---|---|---|
| IMMEDIATE CAUSE (A) SHOCK | | HOURS | ☒ YES ☐ NO |
| | | | 024-3052 |
| (B) COVID-19 | | DAYS | 109. BIOPSY PERFORMED? ☐ YES ☒ NO |
| (C) | | | 110. AUTOPSY PERFORMED? ☐ YES ☒ NO |
| (D) | | | 111. USED IN DETERMINING CAUSE ☐ YES ☐ NO |

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107
SEVERE PROTEIN CALORIE MALNUTRITION, CHRONIC ANEMIA, ACUTE METABOLIC, HEART FAILURE REDUCED EJECTION FRACTION, ENCEPHALOPATHY

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112?
NO

114. DECEDENT PREGNANT ☐ YES ☒ NO ☐ UNK

| 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|
| HONG-ZHUAN TANG, MD | A66170 | 06/12/2024 |

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE
NICOLE CLAIRE DEVALLE, MD
901 NEVIN AVENUE, RICHMOND, CA 94801

| 114. | | 116. |
|---|---|---|
| 06/08/2024 | 06/10/2024 | |

119. MANNER OF DEATH ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Pending Investigation ☐ Could not be Determined

120. INJURED AT WORK ☐ YES ☐ NO ☐ UNK

121. INJURY DATE mm/dd/ccyy | 122. HOUR 24 Hours

123. PLACE OF INJURY

124. DESCRIBE HOW INJURY OCCURRED

125. LOCATION OF INJURY

126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|

CACONTRA02

---

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA



000034556

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Contra Costa County Recorder.

ATTEST _____

DATE ISSUED 07/11/2024 _____

KRISTIN B. CONNELLY
COUNTY RECORDER

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Deputy Recorder.

# EXHIBIT "C"

Not for Official Use : This copy has not been QUALITY ASSURED.

RECORDING REQUESTED BY

NAME: DocSolution, Inc.

WHEN RECORDED MAIL TO:

NAME: DOCSOLUTION, INC.

ADDRESS: 2316 SOUTHMORE

CITY/STATE/ZIP: PASADENA, TX 77502

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0077466**
Monday, Aug 12, 2024 08:35:00
SB2 Fee: $75.00

Total Paid: $96.00          Receipt #: 202400073668

9 - Ingeo                         209 / AGPC2 / 1-3

(SPACE ABOVE FOR RECORDER'S USE)

Assignment of Deed of Trust
**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Requested By And
After Recording Return To:

**DS DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928
DocSolutionUSA, LLC, d/b/a DocSolution, Inc. did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to preparer by Grantor/Grantee and/or their Agent.

## ASSIGNMENT OF DEED OF TRUST

Client Id: RMS/FCAOL
Loan #: 212207-ER

*7 5 0 6 8 0 2 *

Min: 1008549-3000020226-0        MERS Phone: 1-888-679-6377

*FOR VALUE RECEIVED*, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY , whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS, does hereby assign and transfer to MORTGAGE ASSETS MANAGEMENT, LLC, forever and without recourse, whose address is 14405 Walters Road, Suite 200, Houston, TX 77014, all its right, title and interest in and to a certain deed of trust from FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUS TOR AND TRUSTEE to FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B for $544,185.00, dated 2/8/2006 of record on 2/14/2006 as Document 2006-0047656-00, in the CONTRA COSTA County Recorder's Office, State of CALIFORNIA.

Property Address: 334 SOUTH 18TH STREET, RICHMOND, CALIFORNIA 94804
Parcel: 544-163-033

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Executed this __8/8/2024__ .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY AS NOMINEE FOR
FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS

By:    CAROL CRISWELL
Title: ASSISTANT SECRETARY

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared CAROL CRISWELL,
ASSISTANT SECRETARY known to me (or proved to me on the oath of _____ ), to
be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me
that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS BENEFICIARY, A DELAWARE CORPORATION, AS NOMINEE FOR FINANCIAL
FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS a corporation, and that he/she
had executed the same as the act of such corporation for the purpose and consideration therein expressed,
and in the capacity therein stated.

Given under my hand and seal of office this __8__ day of __Aug__ , A.D. _2024_ .

Notary Public in and for the State of Texas
Notary's Printed Name: _____
My Commission Expires: _____

Cyndhya Cuadra
My Commission Expires
11/21/2026
Notary ID 134074756

DOT for $544,185.00 dated 2/8/2006

Not for Official Use : This copy has not been QUALITY ASSURED.

# EXHIBIT "D"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
Financial Freedom
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 3000020226
Effective Date: 05/01/2009



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2009-0231304-00
Check Number
Wednesday, SEP 30, 2009 12:16:48
MOD    $1.00:REC    $5.00:FTC    $0.00
DAF    $2.70:REF    $0.30:RED    $1.00
Ttl Pd    $10.00    Nbr-0000271124
                                dar /R7/1-1

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, WHOSE ADDRESS IS 190 TECHNOLOGY PARKWAY SUITE 100 , NORCROSS, GA 30092 by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNEE)
Said Deed made by FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005 FLORIA EVANS TRUSTOR AND TRUSTEE and recorded on 02/14/2006 as Inst# 2006-0047656-00 in Book , Page in the office of the CONTRA COSTA County Recorder, California.
Property more commonly known as: 334 SOUTH 18TH STREET, RICHMOND, CA 94804

THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FINANCIAL FREEDOM SENIOR FUNDING CORPORATION.

Dated:09/24/2009
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

By:_____
    CRYSTAL MOORE   VICE PRESIDENT

STATE OF FLORIDA        COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me THIS 24TH DAY OF SEPTEMBER IN THE YEAR 2009 by CRYSTAL MOORE, well known to me to be the VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a corporation on behalf of the corporation.

_____
CHRISTOPHER JONES   Notary Public

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

My Commission expires:
Prep by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

form5/FRMCA1

FFSAM 10310714 DB01 3 CJ2275892  MIN 100854930000202260 MERS PHONE 1-888-679-MERS


*10310714*

# EXHIBIT "E"

Not for Official Use : This copy has not been QUAL...

```
*$R0001253733$*
```

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2024-0099494**
Wednesday, Oct 9, 2024 10:57:00
SB2 Fee: $75.00

Total Paid: $98.00          Receipt #: 202400093992
9 - Ingeo                    199 / CARRIEPC / 1-3

**RECORDING REQUESTED BY:**

Slate Mortgage Solutions

**WHEN RECORDED MAIL TO:**

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

APN: 544-162-003-5 FKA 544-162-003     TS No: CA07000940-24-1          TO No: S-LH-CA-177465-TSG

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息总摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recording appears on this notice).

This amount is $513,657.60 as of October 8, 2024, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

for Official Use : This Copy has not been QUALITY ASSURED.

APN: 544-162-003-5 FKA 544-162-003    TS No: CA07000940-24-1          TO No: S-LH-CA-177465-TSG

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Mortgage Assets Management, LLC c/o MTC Financial Inc. dba Trustee Corps located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 711 949.252.8300 Ref No: CA07000940-24-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

# REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of February 8, 2006, executed by FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUSTOR AND TRUSTEE, as Trustor(s), to secure obligations in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B. , the original Beneficiary, recorded February 14, 2006, as Instrument No. 2006-0047656-00, of the official records in the Office of the Recorder of Contra Costa County, California, and is subject to the terms and conditions contained therein.

THE SUBJECT DEED OF TRUST IS A REVERSE MORTGAGE THAT BECAME ALL DUE AND PAYABLE ON June 10, 2024 FOR THE FOLLOWING BREACH: Failed to pay the principal balance which became all due and payable based upon the death of all mortgagors

The Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to, the obligations set forth in a Promissory Note with a face amount of $544,185.00, and that a breach and default of the obligations for which said Deed of Trust is security has occurred in that the Trustor(s) has failed to perform obligations pursuant to or under the Note and/or the Deed of Trust.  By reason thereof, the present Beneficiary under such Deed of Trust, has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: October 8, 2024                    MTC Financial Inc. dba Trustee Corps
                                          as Duly Appointed Successor Trustee


                                          _____
                                          By: Bernardo Sotelo, Authorized Signatory

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

[NOT FOR OFFICIAL USE - This copy has not been QUALITY ASSURED]

## Declaration of Mortgage Servicer Pursuant to
## Civil Code § 2923.55(c)

**Borrower(s):**        Estate of Floria Evans
**Mortgage Servicer:**  PHH Mortgage Services
**Property Address:**   334 South 18th Street, Richmond, CA 94804

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐  The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since the initial contact was made.

☐  Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(e), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☒  No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5. Floria Evans is deceased

☐  The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, or the loan is not secured by owner-occupied residential real property as described in Civil Code § 2924.15(a).

☐  With respect to California Civil Code §3273.10, the mortgage servicer received a request for a forbearance/an extension in connection with COVID-19 from the borrower, and such request was denied. A copy of the written notice is attached; AND a forbearance/an extension ☐ was or ☐ was not subsequently provided.

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 7/10/2024
PHH Mortgage Services

A. Isaac

*A. Isaac*

California Uniform Declaration of Compliance, 03/22/2021

# EXHIBIT "F"

Not for Official Use : This copy has not been QUALITY ASSURED.

*S R 0 0 0 1 3 8 0 3 3 2 S *

Electronically Recorded
CONTRA COSTA Co Recorder Office
KRISTIN B. CONNELLY, Clerk-Recorder
**DOC - 2025-0043165**
Friday, May 2, 2025 14:05:00
SB2 Fee: $75.00

Total Paid: $98.00          Receipt #: 202600044402

9 - Ingeo                                     220 / ABPC / 1-3

RECORDING REQUESTED BY:

Slate Mortgage Solutions

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

TS No: CA07000940-24-1        APN: 544-162-003-5 FKA 544-162-003        TO No: S-LH-CA-177465-TSG

### NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘翼
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED February 8, 2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On July 2, 2025 at 01:30 PM, at the north side of the Pittsburg Civic Center near the grass located at 65 Civic Avenue, Pittsburg, CA 94565, MTC Financial Inc. dba Trustee Corps, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on February 14, 2006 as Instrument No. 2006-0047658-00, of official records in the Office of the Recorder of Contra Costa County, California, executed by FLORIA EVANS REVOCABLE LIVING TRUST DATED 5/12/2005, FLORIA EVANS TRUSTOR AND TRUSTEE, as Trustor(s), in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDYMAC BANK, F.S.B. as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: 334 SOUTH 18TH STREET, RICHMOND, CA 94804

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No: CA07000940-24-1          APN: 544-182-003-5 FKA 544-182-003          TO No: S-LH-CA-177465-TSG

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $480,868.14 (Estimated).  However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.  The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the Internet Website address www.nationwideposting.com or call Nationwide Posting & Publication at 916.939.0772 for information regarding the Trustee's Sale for information regarding the sale of this property, using the file number assigned to this case, CA07000940-24-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

TS No: CA07000940-24-1          APN: 544-162-003-5 FKA 544-162-003          TO No: S-LH-CA-177465-TSG

## Notice to Tenant

### NOTICE TO TENANT FOR FORECLOSURES AFTER JANUARY 1, 2021

You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 916.939.0772, or visit this internet website www.nationwideposting.com, using the file number assigned to this case CA07000940-24-1 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: April 30, 2025

MTC Financial Inc. dba Trustee Corps
TS No. CA07000940-24-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 711 949.252.8300

By: Loan Quema, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.nationwideposting.com
FOR AUTOMATED SALES INFORMATION PLEASE CALL:
Nationwide Posting & Publication AT 916.939.0772**

To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

Not for Official Use : This copy has not been QUALITY ASSURED.

Not for Official Use : This copy has not been QUALITY ASSURED.

# EXHIBIT "G"

Estate of Floria Evans
334 South 18th Street
Richmond, CA 94804

Property Address:
334 South 18th Street
Richmond, CA 94804

**Re: PAYOFF STATEMENT**

# LIMITED TIME OFFER

Please permit this letter to serve as the payoff statement required as defined by the Department of Housing and Urban Development for the purposes of settlement and payoff of the above-referenced reverse mortgage loan. Pursuant to regulation set forth under 24 CFR 206.125(c), the payoff amount accepted by the mortgagee shall be equal to 95% of the current appraised value of the property or the loan balance, whichever is less. The property's current appraised value Effective 05/08/2025.

| Balance Type | Total |
|---|---|
| Loan Balance | $530,362.69 |
| Appraised Value | $500,000.00 |
| 95% Payoff | $475,000.00 |

## Reduced payoff of $475,000.00 valid through 06/27/2025

**Payoff Instructions:**
This payoff settlement will satisfy the loan in full. Please include the loan number with your payment.
Funds must be made by wire or overnight a cashier's check or certified funds.

- **Wire: Texas Capital Bank, ABA #111017979, Account #2111078198**
- **Credit to Loan: 3000020226**
- **ACCOUNT NAME- PHH Mortgage Services**
- **Checks payable to:    PHH Mortgage Services
PO BOX 24781 ATTN: RSVPO
West Palm Beach, FL 33416**

If your mailing address has changed, please let us know in writing; otherwise, any funds in excess of the payoff amount will be returned to the mailing address listed above.

www.reverse.mortgagequestions.com                                                      R0385

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# EXHIBIT "H"

EXHIBIT # 13 _____ 2-18-2026

 Gmail

Emma Evans <eem2estate@gmail.com>

\* INFORMATION SENT WHILE ON

## SKEY #212207 Floria Evans Estate Urgent Foreclosure Postponement Request Loan Amount Verification

PHONE WITH PHH DURING SALE,

1 message

---

**Emma Evans <eem2estate@gmail.com>**
To: preserve@phhreverse.com, "Heir.Payoffs" <Heir.Payoffs@phhreverse.com>

Wed, Feb 18, 2026 at 11:56 AM

Feb. 18, 2026

Dear PHH,
Attached you will find the loan amounts and information related to the approval letter for Luther Evans to pay off the property at 334 So. 18th Street Richmond Ca.
It is our hope that an extension will be granted to allow time to close this loan and prevent a foreclosure sale today.

Respectfully,
Emma Miles
Trustee

---

**3 attachments**


**Luther Evans Loan Documents Showing Loan Amts.jpeg**
4842K


**Luther Evans Loan Documents 2.jpeg**
3372K

**Luther Evans Approval Letter.pdf**
364K

EXHIBIT #13                    2-/19/2024

 **Gmail**                    Emma Evans <eem2estate@gmail.com>

---

## E Miles PHH Wrongful Sale Back to Beneficiary — LeTTeR SeNT TO
1 message                    Los MiTigATioN AFTeR

Emma Evans <eem2estate@gmail.com>     ForeClosue Thu, Feb 19, 2026 at 9:47 AM
To: mhernandez@nacalossmit.org                    SAle .

February 19, 2026

Good Morning Miguel,

I am writing this letter on behalf of my sister Emma Miles, to inform you that yesterday a foreclosure sale was held by PHH and they sold my mothers home back to the beneficiary. The reason this is troubling to us, is that PHH requested loan approval which was provided to them and they wanted to confirm the loan amount applied for.
We sent over on Feb. 17th, the approval letter for our brother Luther and next they requested the document showing the loan amount requested. So on Feb. 18th we called that morning and Alex from PHH said send over the document to stop the sale and we did. Since we did not hear back, we called over again and PHH said they had received the documents, this was at 1:30pm the time of the sale. Ann from PHH placed me on hold while she told me she was sending an email to stop the sale. However, while I was on hold with PHH, my brother Luther who attended the sale stated that at around 1:45 the Trustee called the property. Although no one bid and PHH was not there and no representative attended, the Trustee just said 334 S. 18th Street will go back to the beneficiary. The sale was called while PHH foreclosure had me on hold, misleading me into thinking the sale had been postponed to allow Luther to finish the loan process.

Emma, wanted to let you know what happend to see if there is anything we could do about this, it feels like duel tracking. Several questionable things that happened in the last few weeks leading up to this point. PHH had received communications from the lender and title group so they knew the loan was close to completion. I have attached the documents sent to PHH to postpone the sale that they requested. However, they went ahead with the sale while I was online with them as they told me they were sending the email to stop the sale.

Thank you for your help,
Flo Jones for Emma Miles

---

**3 attachments**


**Luther Evans Loan Documents Showing Loan Amts.jpeg**
4842K


**Luther Evans Loan Documents 2.jpeg**
3372K

EXHIBIT #13 ✳ FEB 18,2026 SALE



## Property Search Detail

| | |
|---|---|
| Status: | Sold back to beneficiary for: $470,000.00 |
| APN: | 544-162-003-5 FKA 544-162-003 |
| TS Number. | CA07000940-24-1 |
| Sale Date. | 02/18/2020 |
| Sale Time: | 1:30 PM |
| Sale County: | CONTRA COSTA |
| Property Address: | 334 SOUTH 18TH STREET<br>RICHMOND, CA 94804 |
| Sale Location: | At the north side of the Pittsburg Civic Center near the grass located at 65 Civic Avenue, Pittsburg, CA 94565 |
| Final Bid: | $470,000.00 |

NOTE TO ANY ELIGIBLE POST SALE BIDDERS: If the property is subject to CA Civil Code §2924f and 2924m and you are an eligible post sale tenant buyer or eligible post sale bidder as defined in CA Civil Code §2924m you must timely send your written notice of Intent to bid and/or a post-sale bid to the trustee, Trustee Corps,17100 Gillette Ave., , Irvine, CA, 92614 as required pursuant to CA Civil Code § 2924m. This NOTE is provided solely for the purpose of providing the trustee's mailing address and should not be taken as legal advice. If you think you may qualify as an eligible post sale tenant buyer or eligible post sale bidder you should consider contacting an attorney or appropriate real estate professional for advice.

Nationwide Posting & Publication

TRUSTEE told LuTHER HE HAD
UNtil MARCH 18, 2026 TO COMPLETE
LOAN to PURCHASE HOME BACK From PHH.

Home | Services | Contact | Trustee Sale Information | Login | Privacy Policy

First American Title Insurance Company, and the operating divisions thereof, make no express or implied warranty respecting the information presented and assume no responsibility for errors or omissions. First American and the eagle logo are registered trademarks or trademarks of First American Financial Corporation and/or its affiliates.

©2026 First American Financial Corporation and/or its affiliates. All rights reserved.

# EXHIBIT "I"

*E x H i B i t # 14    Response*
*Rec'D 2/25/2026*

 Gmail

Emma Evans <eem2estate@gmail.com>

## SKEY #212207 Estate of Floria Evans Foreclosure Information
1 message

**Emma Evans** <eem2estate@gmail.com>                    Tue, Feb 24, 2026 at 9:41 AM
To: preserve@phhreverse.com, "Heir.Payoffs" <Heir.Payoffs@phhreverse.com>

Feb. 24, 2025

To Heir Payoff, Phh Preserve, Foreclosure Dept, Loss Mitigation,

As the Trustee for the Floria Evas Estate, I contacted PHH on Feb 17, 2026 and spoke to Alex whom, said a sale could be postponed if loan confirmation and loan amount information was received. The information was sent and the heir attended the trustee sale and was told by Mike the auction representative that he called PHH in front of the heir and told him PHH had given him until March 28, 2026 to complete the loan process for the property.

I am confused, and need to verify immediately the status of the extension we were told PHH granted. A guy representing PHH, appeared at the property on Feb. 23 attempting to break into the property to change the locks. Can you please verify the status of the promised extension.

Thank you
Emma Miles
Trustee

# EXHIBIT "J"

EXHIBIT # 15

**PHH**

**MORTGAGE**

PO Box 24606, West Palm Beach, FL 33416

*handwritten, right margin:* REC'D 2/25/2026
* FIRST REQUEST FROM
PHH SINCE 2/13/2024
THEY WOULD NOT RESPOND
to OUR E-MAILS.

February 24, 2026

Loan Number: 3000020226
Loan Skey: 212207

Emma J. Miles
eem2estate@gmail.com

Property Address:
334 South 18th Street
Richmond, CA 94804

### RESPONSE LETTER FOR THE RECENT REQUEST

Dear Emma J. Miles,

Thank you for the recent communication regarding the account referenced above in which you submitted a foreclosure sale postponement request along with supporting documents.

We regret to inform you that we are unable to fulfill your request. Please be advised that the investor does not accept a loan application as valid proof of funds.

Our records indicate that the foreclosure sale was completed on February 18, 2026, and the account is now classified as Real Estate Owned (REO). Accordingly, we are unable to process a postponement of the sale. Additionally, California does not offer a post-sale redemption period. Therefore, no reinstatement or redemption options are available once the foreclosure sale has been finalized.

If you have questions, please call us at 866-799-7724 during regular business hours of 8:00 a.m. - 7:00 p.m. Eastern Time, Monday through Friday.

Sincerely,

Loan Servicing

*handwritten:* ＊ PHH WAS SENT LOAN Approval LETTER & The Complete Application Showing the LOAN AMT APPlyed FOR to COVER the LOAN PAYOFF.

NMLS: 2726          reverse.mortgagequestions.com
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically filed the foregoing document with the Court using the CM/ECF system, which will send a Notice of Electronic Filing by email to counsel for all parties that have appeared in this action.

_/s/ Owen Campbell_
Owen Campbell
